1060

BOCOOK OUTDOOR MEDIA, INC., Respondent-Appellant v. SUMMEY OUTDOOR ADVERTISING, INC., Appellant-Respondent.

(363 S. E. (2d) 390)

Court of Appeals

*Glenn W. Thomason,* of *Long, Thomason & Mullinax,* and *John M. O'Rourke,* of *Doyle & O'Rourke,* Anderson, *for appellant-respondent.*

*Kenric E. Port* and *Wm. Douglas Gray, Watkins, Vandiver, Kirven, Gable & Gray,* Anderson, *for respondent-appellant.*

Heard Oct. 19, 1987.

Decided Dec. 7, 1987.

CURETON, Associate Judge:

This case involves claims of violation of the South Carolina Unfair Trade Practices Act (SCUTPA) and interference with contractual relations. Bocook Outdoor Media, Inc.

(Bocook) and Summey Outdoor Advertising, Inc. (Summey) are competitors in the outdoor advertising business. The claims of the parties arise from their competitive practices in obtaining billboard leases in and around Anderson County. Both parties appeal various aspects of the jury verdict. We affirm.

## I.

Bocook is in the business of renting outdoor advertising space on billboard signs. This is accomplished by leasing a location for a billboard from a landowner. The billboard is erected and the space is then rented to an advertiser. Bocook has been doing business in Anderson County for several years. Summey is also in the outdoor advertising trade. Originally, Summey operated in the western North Carolina area. In the early 1980's, Summey decided to come into the South Carolina market and began competing in the same geographical area as Bocook. The competitive situation between Bocook and Summey became intense.

Bocook filed suit against Summey alleging interference with contractual relations and violation of the South Carolina Unfair Trade Practices Act. Bocook alleged Summey was engaged in a campaign to force the removal of Bocook billboards and to monopolize the outdoor advertising business in Anderson County. Summey counterclaimed on the same legal theories alleging Bocook was obtaining sign permits from the South Carolina Highway Department without having leases for the locations and was attempting to persuade landowners not to enter into leases with Summey. The jury returned a verdict for Bocook on its claim and for Summey on its counterclaim of violation of the SCUTPA.

## II.

The jury returned a verdict for Bocook against Summey in the amount of Ten Thousand Dollars for violation of the Unfair Trade Practices Act and Five Thousand Dollars for interference with contractual rights. The trial judge trebled the Ten Thousand Dollar award to Thirty Thousand Dollars under Section 39-5-140 based upon a finding of willfulness by the jury. Summey has appealed on several grounds.

## A.

Summey alleged the outdoor advertising industry was exempt from the provisions of the SCUTPA. Section 39-5-40(a), Code of Laws of South Carolina, 1976. Summey based this claimed exemption upon the "Highway Advertising Control Act" contained in Section 57-25-110 *et. seq.*, Code of Laws of South Carolina, 1976. Summey argues the outdoor advertising industry is regulated by the South Carolina Highway Department through the issuance of permits for placement of billboards on public highways. The trial court ruled against Summey. We concur with the trial court.

Section 39-5-40(a) provides, in part, the Unfair Trade Practices Act shall not apply to:

> Actions or transactions permitted under laws administered by any regulatory body or officer acting under statutory authority of this State or the United States or actions or transactions permitted by any other South Carolina State law.

The South Carolina Supreme Court has held securities transactions are exempt from the Unfair Trade Practices Act because they are regulated by the Securities and Exchange Commission as well as the South Carolina Uniform Securities Act. The Court noted violation of the regulations subjected an offender to liability. *State ex. rel. McLeod v. Rhoades*, 275 S. C. 104, 267 S. E. (2d) 539 (1980). This Court recently held the sale of mobile homes exempt from the Act because it is subject to regulatory control and imposition of penalties by the South Carolina Manufactured Housing Board for unfair or deceptive practices. *Scott v. Mid-Carolina Homes, Inc.*, 293 S. C. 191, 359 S. E. (2d) 291 (Ct. App. 1987).

A review of the "Highway Advertising Control Act" reveals the Act is designed to regulate size and location of outdoor advertising signs. Specifically, the Act states some of its purposes are to protect safety on the highways and to preserve and enhance the natural scenic beauty. Section 57-25-130. The State Highway Department is charged with issuing permits for the erection of signs. Section 57-25-150. Neither the statutes nor the regulations promulgated pur-

suant to the statutes address or regulate unfair competition among outdoor advertisers. Therefore, we do not find an exemption for the outdoor advertising industry from the Unfair Trade Practices Act.

## B.

Summey argued by exception the trial court erred in denying its motion that the Unfair Trade Practices Act was unconstitutionally vague. We fail to see where this issue was raised in the pleadings or was the subject of a trial motion. Accordingly, this court does not address that issue. *Harris v. Campbell*, 293 S. C. 85, 358 S. E. (2d) 719 (Ct. App. 1987).

## C.

Summey excepts to the trial court's ruling with respect to the admission of two portions of testimony. We find no error in the decision of the trial court in either admission.

Bocook offered the testimony of John Cantey Heath as an expert witness. Mr. Heath is president of Columbia Outdoor Advertising and is also president of the South Carolina Outdoor Advertising Association. Heath's testimony was offered to establish business customs in the outdoor advertising industry. Summey raised no objection to the qualifications of Heath but objected to his testimony on the ground it was not necessary to have expert testimony on this issue. The trial court took *in camera* testimony from Heath and then determined the subject matter was appropriate for expert testimony.

The admission or exclusion of evidence is a matter within the sound discretion of the trial judge. The exercise of the judge's discretion will not be disturbed on appeal absent a clear showing of an abuse of discretion, the commission of legal error in its exercise, and prejudice to the rights of the appellant. *Bonaparte v. Floyd*, 291 S. C. 427, 354 S. E. (2d) 40 (Ct. App. 1987). Whether the inquiry is one for which expert testimony is proper is a matter for the trial judge to determine and his ruling will not be disturbed unless it appears an abuse of discretion occurred. *Ballou v. Sigma Nu General Fraternity*, 291 S. C. 140, 352 S. E. (2d) 488 (Ct. App. 1986).

Mr. Heath testified the customs of the outdoor advertising industry do not condone the practice of one

outdoor advertiser contacting landowners who had previously leased a site to another advertiser in an effort to obtain the lease on the location. On cross examination, Summey established there were no written ethical standards for the industry and Mr. Heath had been through a similar competitive situation in his business. It was for the jury to weigh the credibility of the testimony. We note a former employee of Summey, Rodney Ralph Monroe, had testified earlier in the trial that most outdoor advertisers as a matter of ethics do not try to lease away property from a competitor in order to force down the other advertiser's sign. The appellate record discloses no objection by Summey to this testimony by Monroe. We find no abuse of discretion in the admission of the Heath testimony.

The second area of challenged testimony involves the testimony of James F. Bocook. Mr. Bocook is the president of Bocook Outdoor Media, Inc. Mr. Bocook testified his main concern was the practice of Summey trying to secure a lease from a landowner who already had a Bocook billboard on his property. If Summey obtained the lease, Bocook would have to remove its sign. Mr. Bocook testified several landowners contacted him about increased rents for their properties. He was attempting to show he had to pay more rent in order to keep his leases due to Summey's actions. Summey objected to this testimony on the ground of hearsay. The trial court overruled this objection. A part of his testimony is as follows:

Q. Did any of these landowners contact you?
A. Yes, sir.
Q. Did Mr. Jack Alexander contact you?
A. Yes, sir.
Q. Did he request for his sign to be removed?
A. No, sir.
Q. Did he request more money?
A. Yes, sir.

To analyze whether the evidentiary ruling was correct, we must first consider whether the testimony is hearsay. If it is hearsay, then we must determine if it is admissible under an exception to the hearsay rule.

Hearsay is defined as an out-of-court statement offered in

evidence at trial to prove the truth of the matter asserted. *Yaeger v. Murphy*, 291 S. C. 485, 354 S. E. (2d) 393 (Ct. App. 1987). If an extrajudicial statement is not offered to prove the truth of the statement it is not hearsay. In the context of this case, the testimony was offered not to prove the truth of the actual statements between Bocook and the landowners but to prove the conversations took place. Therefore, the testimony was not hearsay. We also note a prior employee of Summey, Grayson Pitts, had already testified without objection about his contacts with landowners who had Bocook billboards. Specifically, in light of that testimony, we find no error.

### D.

Summey excepts to the denial of its motions for directed verdict, judgment n.o.v., and new trial on the claim of interference with contractual relations. The jury awarded Five Thousand Dollars to Bocook. Summey filed a summary judgment motion on this issue which was denied. Although Summey excepts to the denial of its summary judgment motion the denial is not immediately appealable nor is it appealable after final judgment. *Harris v. Campbell*, 293 S. C. 85, 358 S. E. (2d) 719 (Ct. App. 1987); *Holloman v. McAlister*, 289 S. C. 183, 345 S. E. (2d) 728 (1986). In reviewing the denial of the trial motions, this Court must view the evidence in the light most favorable to Bocook. *Cohen v. Allendale Coca-Cola Bottling Co.*, 291 S. C. 35, 351 S. E. (2d) 897 (Ct. App. 1986). A jury verdict must be sustained if any evidence reasonably supports it. *Bonaparte v. Floyd, supra; McGaha v. Mosley*, 283 S. C. 268, 322 S. E. (2d) 461 (Ct. App. 1984).

The elements of a cause of action for interference with contractual relations are: (1) a contract; (2) the wrongdoer's knowledge of the contract; (3) the intentional procurement of the breach of the contract by the wrongdoer; (4) the absence of justification; and (5) resulting damages. *DeBerry v. McCain*, 275 S. C. 569, 274 S. E. (2d) 293 (1981). Summey argues the lack of any evidence to establish the first and third elements.

Concerning the existence of a contract, most of the lease arrangements between Bocook and various landowners were oral. Summey argues these agreements

violate the Statute of Frauds. This argument is without merit for two reasons. First, Summey is a stranger to any agreement between Bocook and these landowners and therefore cannot assert the Statute of Frauds. *Hatcher v. Harleysville Mut. Ins. Co.*, 266 S. C. 548, 225 S. E. (2d) 181 (1976). Second, even if Summey-were in a position to raise the Statute of Frauds as a defense, the amended answer in the records fails to plead it. South Carolina Rule of Civil Procedure 8(c) designates the Statute of Frauds as an affirmative defense.

It is obvious Bocook had a contractual agreement of some kind with the various landowners because Bocook had constructed billboards on their properties. Summey was in the same business and would know Bocook had an agreement with the landowners. All Summey had to do was to see the billboards to know or have reason to know of the existence of agreements. It is true Summey probably would not know the details of the leases because they were oral.

Unfortunately, the record does not contain much detail about the various leases and their terms. We do not know whether this is because no evidence was introduced or was introduced but the parties did not consider this information pertinent to the appeal. From what we do have, it appears most of the leases involved a payment by Bocook to the landowner with renewal accomplished by Bocook sending a check to the landowner. James Bocook testified the leases ran until the landowner told him to remove the sign. In some situations, there was a thirty day notice period for the landlord to notify Bocook to remove the billboard. There is no information in the record as to what notice Bocook would give a landowner if it desired to remove the billboard for some reason. From the record, we construe these agreements to be contracts terminable at will. This Court previously held a contract terminable at will is a contract upon which an action for interference with contractual relations may be brought. *Todd v. S. C. Farm Bureau Mut. Ins. Co.*, 283 S. C. 155, 321 S. E. (2d) 602 (Ct. App. 1984), quashed on other grounds, *Todd v. S. C. Farm Bureau Mut. Ins. Co.*, 287 S. C. 190, 336 S. E. (2d) 472 (1985). In *Todd*, we said the alleged act of interference must influence, induce, or coerce one of the parties to the contract to abandon the

relationship or breach the contract. The plaintiff must show that, but for the interference, the contractual relationship would have continued. *Todd*, 283 S. C. at 164, 321 S. E. (2d) at 608. In this case, it was for the jury to decide whether the actions of Summey induced the landowners to abandon their relationship with Bocook which would have continued but for the actions by Summey.

Summey also argues there was no evidence to establish the element of intentional procurement of the breach of the contract. Grayson Pitts, a former employee of Summey, testified Summey had a bonus plan in which a Summey salesman would receive a bonus for each Bocook billboard which was forced down because Summey obtained the lease on the property. Pitts identified landowners he contacted with this bonus plan in mind. He also testified he offered these landowners more for their locations than he did other landowners because he was trying to entice them to give the lease to Summey rather than stay with Bocook. Summey argues their leases did not go into effect until the Bocook leases were terminated. This may be true but the argument misses the point because the jury could reasonably infer the reason the Bocook lease was terminated was because Summey had purposely enticed the landlords to abandon their relationship with Bocook.

We are aware business competition is generally considered beneficial. Prior opinions in this state discussing interference with contractual rights have primarily dealt with employment situations. *Todd, supra; Crowe v. Domestic Loans Inc.*, 242 S. C. 310, 130 S. E. (2d) 845 (1963); *Meadors v. S. C. Medical Assoc.*, 266 S. C. 391, 223 S. E. (2d) 600 (1976); *Webster v. Holly Hill Lumber Co.*, 268 S. C. 416, 234 S. E. (2d) 232 (1977). The parties have not directly addressed the issue of business competition in the context of a claim of interference with contractual rights. Summey did not make the argument that some types of business competition could be considered proper, and thus affect the justification element of the cause of action. Under the facts of this case, we believe the issue of whether particular practices engaged in by these business competitors constituted improper interference was a matter for the jury to decide based upon the evidence presented.

### E.

Summey also excepts to the denial of its motions for ▮ directed verdict, judgment n.o.v., and new trial with respect to the alleged violation of the Unfair Trade Practices Act. The jury awarded Bocook Ten Thousand Dollars on this claim which was trebled by the trial judge. Section 39-5-140, Code of Laws of South Carolina, 1976.

Section 39-5-20(a), Code of Laws of South Carolina, 1976, provides:

> Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

In this case, Bocook alleged Summey was engaged in an attempt to monopolize the market for outdoor advertising in Anderson County. Bocook also argues Summey had entered into a market division agreement with another advertiser such that Summey and the other advertiser had agreed to allocate various territories among themselves and not to compete with each other in those territories. There was some testimony, if the jury chose to believe it, that Summey had an agreement with Naegele Advertising Company not to compete in the same areas. Specifically, Summey would not operate in the Greenville area where Naegele was located in exchange for Naegele's agreement not to operate in the Anderson area. There was also testimony Summey had agreed with Naegele not to hire each other's employees.

Viewing the evidence in the light most favorable to Bocook, Grayson Pitts, a former employee of Summey, testified Summey had a bonus plan in which an employee received a Three Hundred Dollar ($300.00) bonus for each billboard face belonging to Bocook that was removed due to Summey obtaining the lease on the property from the landlord. Pitts identified a number of people he contacted. He was successful in obtaining a lease on some of these locations. James Bocook identified many of these same people as individuals who sought higher rentals from his company for the billboards on their properties. Further, there is testimony in the record that at least on one occasion Summey obtained a lease on property containing Bocook billboards even though Summey knew it would not be able to erect its

own signs due to regulations. Apparently, the Bocook signs on that property had been "grandfathered" in under new regulations but if they were removed no new signs would be permitted on the location. It is inferable Summey obtained the lease for the sole purpose of forcing the Bocook signs from the property. Additionally, there was testimony Summey had offered to buy Bocook on several occasions. Rodney Ralph Monroe, the former vice president of Summey, testified Mike Summey was disgusted when James Bocook would not sell and made the comment Bocook was "dead on the vine and didn't know it at the time." Therefore, there is some evidence in the record from which a jury could reasonably infer Summey was engaged in an effort to drive Bocook out of business in Anderson County.

The record does not contain the trial judge's charge to the jury on this cause of action. Although Summey originally filed an exception to the charge this exception was abandoned. Therefore, we do not know how the trial judge defined the concept of unfair competition. In light of the record as it was presented on appeal, we believe the issue of alleged unfair competition was a matter for the jury to decide based upon its assessment of the testimony. *See, Condon v. Best View Cablevision Inc.*, 292 S. C. 117, 355 S. E. (2d) 7 (Ct. App. 1987) (triable issues of fact presented regarding one competitor's disparagement of other competitor).

### F.

Summey filed a counterclaim against Bocook alleging Bocook engaged in unfair trade practices. The jury awarded Summey One Thousand Six Hundred Fifty Dollars ($1,650.00) against Bocook. Summey made a motion for new trial *nisi additur*. The trial judge refused the motion and Summey appeals. Summey argues its damages range from Forty one Thousand Seven Hundred Eight Dollars ($41,708.00) to One Hundred Forty One Thousand Seven Hundred Eight Dollars ($141,708.00).

A trial judge has the power to grant a new trial *nisi additur* when he finds the verdict so grossly inadequate as to be the result of passion and prejudice or merely insufficient based on the evidence. *Haskins v. Fairfield Elec. Co.*, 283 S. C. 229, 321 S. E. (2d) 185 (Ct. App.

1984). We note the jury originally returned a verdict finding a violation of the Unfair Trade Practices Act by Bocook but awarding no damages to Summey. The jury was reinstructed on damages and returned with the award in issue. The trial judge instructed the jury the measure of damages for a violation of the Unfair Trade Practices Act was actual damages. These damages were defined as damages in recompense for a loss or injury sustained as a proximate result of the wrong committed. The judge also stated a party would not be entitled to conjectural or speculative damages.

Mike Summey identified several sites where he alleged his company was not able to erect its billboards in a timely manner because of the actions of Bocook. Mr. Summey gave an estimate of damages based upon the revenue his company would have collected from renting the advertising space on these boards. However, we see nothing in the record to establish Summey had existing customers for the advertising space. Further, his testimony that his company lost One Hundred Thousand Dollars of business is nothing other than the speculation of Mr. Summey. There is testimony Summey paid rent to landowners during these periods of delay. The record contains evidence the rental rates varied from several hundred dollars to one thousand dollars per year. Given the jury instruction on damages, an award based upon rentals is supported by the record. We find no abuse of discretion in the denial of the motion by the trial judge.

## G.

The trial judge awarded attorney fees to counsel for Summey on the Unfair Trade Practices Claim. Section 39-5-140(a). The court received affidavits from counsel as well as time records relating to the case. The court reviewed these records and entered written orders awarding fees. Summey has excepted to the award of fees on the ground the court considered only the amount of the jury verdict and the beneficial results obtained in awarding fees. This exception is without merit. While the judge states in his order the result obtained was marginal it is clear he carefully evaluated all the factors appropriate to an award of attorney fees and based his award upon a careful consideration of the time spent on the prosecution of the coun-

terclaim and an appropriate hourly rate for counsel. Summey did not challenge the valuation of the number of hours spent or the hourly rate. We find no error in the award of attorney fees. *See, Freeman v. Commodore Financial*, 293 S. C. 255, 359 S. E. (2d) 532 (Ct. App. 1987).

### III.

Bocook has cross-appealed challenging the jury verdict against it for violation of the Unfair Trade Practices Act. The jury awarded Summey One Thousand Six Hundred Fifty Dollars ($1,650.00) after the trial judge resubmitted the matter to it. We affirm.

### A.

Viewing the evidence in the light most favorable to Summey, there is some evidence Bocook failed to remove its billboards in a timely manner after request from landowners and/or Summey. Mike Summey testified he paid rent to the landowners even though he was not able to erect his billboards due to Bocook's delay. We do not consider Summey to be a volunteer as argued by Bocook because he made the payments to keep his contracts in effect. There is also some testimony in the record that Bocook obtained permits from the Highway Department to erect billboards on locations where it had no leases. This action prevented Summey from obtaining a permit in a timely manner if it secured a lease on the location. There is also testimony that Bocook contacted advertisers who had agreements with Summey in an effort to persuade these advertisers not to do business with Summey. As with the Bocook claims against Summey, we believe the evidence presented factual issues for the jury as to whether the actions of Bocook against Summey constituted unfair methods of competition.

### B.

Bocook argues the trial judge erred in re-submitting the Unfair Trade Practices claim to the jury after it initially returned its verdict. The jury responded affirmatively to a special interrogatory which inquired whether Bocook violated the Unfair Trade Practices Act. In like manner, the jury found no intentional interference with contract by Bocook. The jury made no award of damages.

The special verdict form is not a part of the record. The transcript indicates the trial judge felt there was some inconsistency or possible confusion by the jury and determined he should re-submit the Unfair Trade Practice claim.

Bocook objected to the re-submission on the ground the jury could find a violation of the Unfair Trade Practices Act, but determine Summey had no ascertainable damages. Section 39-5-140(a). We find no error by the trial judge. We do not have the benefit of the trial judge's initial charge to the jury. Therefore we do not know how he instructed the jury to handle the special verdict form. However, the record reflects the trial judge was not clear on the impact of the jury's initial determination. In such a situation, it was proper for the trial judge to resubmit the matter to the jury for clarification.

For the reasons stated, the judgment is

Affirmed.

SHAW and BELL, JJ., concur.