OMNI OUTDOOR ADVERTISING, INC., Plaintiff–Appellant,

v.

COLUMBIA OUTDOOR ADVERTISING, INC.; J. Willis Cantey; The City of Columbia, Defendants–Appellees.

No. 88–1388.

United States Court of Appeals, Fourth Circuit.

Argued June 5, 1992.

Decided Sept. 2, 1992.

As Amended Sept. 10 and Oct. 27, 1992.

---

Arthur Camden Lewis, Lewis, Babcock, Pleicones & Hawkins, Columbia, S.C., argued (Keith M. Babcock, Lewis, Babcock, Pleicones & Hawkins, Randall M. Chastain, University of S.C. School of Law, Columbia, S.C., on brief), for plaintiff-appellant.

Joel I. Klein, Klein, Farr, Smith & Taranto, Washington, D.C., argued (Roy D. Bates, James S. Meggs, City Attys., Columbia, S.C., for defendant-appellee City of Columbia; Heyward E. McDonald, McDonald, McKenzie, Fuller, Rubin & Miller, David W. Robinson, II, Robinson, McFadden & Moore, P.C., Harry A. Swagart, II, Swagart & Lengel, P.A., Columbia, S.C., for defendant-appellee Columbia Outdoor Advertising, on brief), for defendants-appellees.

Before SPROUSE and WILKINSON, Circuit Judges, and HADEN, Chief United States District Judge for the Southern District of West Virginia, sitting by designation.

## OPINION

WILKINSON, Circuit Judge:

This case comes before us on remand from the Supreme Court. We must assess whether Omni Outdoor Advertising is entitled to a new trial on several theories of liability not covered by the Supreme Court's action. We hold that Omni either waived or failed to establish liability on the remaining causes of action in this case.

### I.

This case stems from allegations made by Omni Outdoor Advertising, Inc. (Omni) that Columbia Outdoor Advertising, Inc. (COA) and the City of Columbia, South Carolina (City), undertook various illegal actions to keep Omni out of the Columbia

outdoor billboard market.[1] This lawsuit was filed in 1982 and was tried before a jury over the course of sixteen days in 1986. By the time the case reached the jury, there were three counts to be considered. First, Omni alleged that COA and the City conspired to restrain trade in violation of 15 U.S.C. § 1. Second, pursuant to 15 U.S.C. § 2, Omni claimed that COA and the City conspired to monopolize the outdoor advertising market in the Columbia area and that COA monopolized or attempted to monopolize. Third, Omni alleged that COA committed unfair trade practices in violation of § 39-5-20 of the South Carolina Code. The jury returned general verdicts against COA on all three counts and against the City on the first two counts. In addition, the jury answered two special interrogatories indicating that COA and the City had engaged in conspiracy to restrain trade and conspiracy to monopolize. The jury also determined that COA owed actual damages in the amount of $600,000 on the first count, $400,000 on the second, and $11,000 on the third.

COA and the City then filed motions for judgment notwithstanding the verdict. After having the motions under consideration for over two years, the district court ultimately granted the motions as to all counts and ordered the lawsuit dismissed. As to the first two counts, the court discussed only the conspiracy aspects of the case in its dismissal order. On the third count related to unfair trade practices, the court granted jnov because it found that the requisite impact of the alleged unfair trade practices upon the public interest had not been proved.

Omni appealed the judge's issuance of jnov to this court. As to the first two counts, however, Omni disputed only the district court's interpretation of the law of antitrust conspiracy. No appeal was taken from the district court's failure to grant a new trial based upon the claim against COA of monopolization or attempted monopolization. An earlier panel of this court reversed the district court and reinstated the verdicts on all three counts. 891 F.2d 1127 (4th Cir.1989). The court believed that the City did not qualify for state action immunity under *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), and its progeny because the City's actions fell within a conspiracy exception to the *Parker* doctrine. 891 F.2d at 1132–37. In addition, the court found sufficient evidence to support a determination that COA's actions in petitioning the City were a "sham" designed to injure Omni, thereby preventing COA's actions from receiving immunity under the doctrine of *Eastern Railroads Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), and *United Mine Workers of America v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). 891 F.2d at 1137–39. The court also indicated that the finding of conspiracy established a sufficient impact upon the public interest to satisfy that requirement of the South Carolina Unfair Trade Practices Act. *Id.* at 1142–43.

COA and the City appealed to the Supreme Court, which reversed this court's ruling. *City of Columbia v. Omni Outdoor Advertising, Inc.*, —— U.S. ——, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991). The Supreme Court held that there was no conspiracy exception to *Parker* immunity, *id.* —— U.S. at ——, 111 S.Ct. at 1351–53, and that COA was entitled to *Noerr–Pennington* immunity, *id.* at ——, 111 S.Ct. at 1353–56. Omni asserted that COA had engaged in several private anticompetitive actions, so the Court remanded the case for a determination of whether a new trial was justified on this theory. The Court instructed us to examine whether "the evidence was sufficient to sustain a verdict on the basis of these other actions alone" and whether "this theory of liability has been properly preserved." *Id.* at ——, 111 S.Ct. at 1356. Noting that its holding undercut this court's ruling that the requisite effect on the public interest had been established as to the South Carolina unfair trade prac-

---

1. The facts were set out in detail in the earlier panel's opinion in this case, so we will not duplicate that effort. *See Omni Outdoor Adver-* *tising, Inc. v. Columbia Outdoor Advertising, Inc.,* 891 F.2d 1127 (4th Cir.1989).

tices count, the Supreme Court also instructed this court to resolve the status of that claim. *Id.*

## II.

As a preliminary matter, we note that the Supreme Court's decision precludes further proceedings against the City of Columbia. As indicated above, the Court ruled that the City was immune from antitrust liability in this case, and the remand instructions refer explicitly and solely to COA and its potential liability. We therefore hold the City's involvement in this action to be at an end.

## III.

■ Omni claims that it is entitled to a new trial on the charges against COA of monopolization and attempt to monopolize. We, however, find that Omni has waived this argument. From the outset, the emphatic focus of this case has been on the alleged conspiracy between COA and the City. It is true, however, that the jury was instructed on the monopolization and attempt to monopolize allegations against COA and that the jury returned a general verdict which left open the possibility that the jury believed COA was liable on these two charges. Despite the consequent availability of arguments relating to monopolization or attempt to monopolize to support the verdict on this count, in its initial appeal to this court, Omni chose to focus exclusively on the conspiracy aspects of the case. Now that Omni has lost on those grounds, it cannot turn back the clock and resuscitate the monopolization and attempt to monopolize theories that it earlier chose not to pursue.

"It is elementary that where an argument could have been raised on an initial appeal, it is inappropriate to consider that argument on a second appeal following remand." *Northwestern Indiana Tel. Co. v. F.C.C.,* 872 F.2d 465, 470 (D.C.Cir.1989); *see* 18 Charles A. Wright *et al., Federal Practice and Procedure* § 4478 (1981). When this case was before the court at the time of the first appeal, the district court had entered jnov in favor of the City and

COA and had dismissed the case in its entirety. It was certainly open to Omni to argue that it was entitled to a new trial on the monopolization and attempt to monopolize theories even if the remaining part of that count, conspiracy to monopolize, was deemed unavailable. Omni, however, chose to focus its argument regarding this count exclusively on the questions relating to the conspiracy to monopolize. Monopolization on the part of COA, apart and distinct from the allegations of conspiracy, was never properly brought before this court. In the "Questions Presented" section of its opening brief in that first appeal, Omni makes no mention of this theory of liability or a new trial based upon it. Indeed, nowhere in that opening brief or the subsequent reply brief did Omni indicate to this court that a new trial was justified on this ground. While Omni did make a few fleeting references in those briefs to the monopolization and attempt to monopolize theories, those scattered references in no way constituted an argument that Omni was entitled to a new trial on that basis. For whatever reason, Omni did not avail itself of the opportunity to raise the monopolization theory when it was appropriate to do so. The argument is thus waived.

Regarding this issue as having been waived furthers the judicial system's interests in avoiding piecemeal litigation. The most rudimentary procedural efficiency demands that litigants present all available arguments to an appellate court on the first appeal. *See Northwestern Indiana Tel.,* 872 F.2d at 470. If parties who lost on appeal were allowed to return to appellate courts to advance different, previously available theories, cases could languish for years before final resolution and already crowded court dockets would swell even more. In addition, it is not fair for an adversary to have to defend the same lawsuit on appeal over and over. "It would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost." *Fogel v. Chestnutt,* 668 F.2d 100, 109 (2d Cir.1981). For reasons of efficiency and fairness,

therefore, we believe that Omni cannot belatedly revisit the monopolization issue.

## IV.

Omni also argues that it should be permitted to amend its complaint under Rule 15(a) of the Federal Rules of Civil Procedure. Rule 15(a) provides that after a responsive pleading has been served, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R.Civ.P. 15(a). Omni seeks to amend its complaint to add three causes of action for trial on remand: a federal count under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*, a state civil conspiracy count, and a state count alleging tortious interference with prospective contractual relations. We reject each of these amendment requests.

■ The claim of tortious interference with prospective contractual relations is simply unavailable to Omni. Omni included that count in its original complaint in 1982, but the count was dismissed by the district court because South Carolina did not recognize that tort. Although the South Carolina Supreme Court has subsequently recognized it, *see Crandall Corp. v. Navistar Int'l Transp. Corp.*, 302 S.C. 265, 395 S.E.2d 179, 180 (1990), the tort applies only prospectively because it creates liability where none formerly existed, *see Hupman v. Erskine College*, 281 S.C. 43, 314 S.E.2d 314, 315 (1984). The theory, therefore, is not one upon which Omni can rely, and amendment of the pleadings to include it is consequently inappropriate.

■ The request for amendment to include the other two theories of recovery is also refused, albeit for different reasons. Although Rule 15(a) indicates that leave to amend should "be freely given when justice so requires," the rule does not afford plaintiffs a tool to engage in the litigation of cases one theory at a time. *See Freeman v. Continental Gin Co.*, 381 F.2d 459, 469 (5th Cir.1967); 6 Charles A. Wright *et al.*, *Federal Practice and Procedure* § 1489 (1990). While Omni concedes that denial of leave to amend is appropriate when a plaintiff has unduly delayed in asserting a cause of action, *see Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), Omni contends that it has engaged in no such delay in putting forth the RICO and state civil conspiracy theories. We, however, disagree. Both of these theories were available to Omni in 1982 when it first brought this lawsuit, and they remained available during the course of the sixteen-day jury trial in this case. Omni justifies its nearly ten-year delay in seeking these amendments as being in conformity with a federal requirement that cases be tried only on what the plaintiff perceives to be its best theories. While it is of course true that a plaintiff should refrain from asserting frivolous theories of recovery, nothing in the federal rules encourages a plaintiff to delay bringing causes of action until the plaintiff's "better" claim is resolved. Indeed, Rule 18 of the Federal Rules of Civil Procedure expressly allows a plaintiff to "join, either as independent or as alternate claims, as many claims ... as the party has against an opposing party." Fed.R.Civ.P. 18(a). Trying cases one claim at a time is both unfair to the opposing party and inefficient for the judicial system. Omni made the tactical decision to forego these claims in this lawsuit, and the expiration of the statute of limitations on both claims precludes Omni from bringing a new action asserting them, *see Agency Holding Corp. v. Malley–Duff & Assocs., Inc.*, 483 U.S. 143, 156, 107 S.Ct. 2759, 2767, 97 L.Ed.2d 121 (1987) (applying statute of limitations of 15 U.S.C. § 15(b) to civil RICO); S.C.Code § 15–3–530(5) (1976) (civil conspiracy). We will not allow Rule 15(a) to afford Omni an avenue to escape the consequences of its earlier decision on how to litigate this case.

## V.

■ Omni also asserts that the jury verdict in its favor on the count relating to COA's alleged violation of the South Carolina Unfair Trade Practices Act (UTPA) should be reinstated. The district court based its entry of jnov on this count on the

failure of the trial evidence to establish that COA's conduct affected the public interest, which the district court correctly concluded is required under South Carolina law. *See LaMotte v. Punch Line of Columbia, Inc.*, 296 S.C. 66, 370 S.E.2d 711, 713 (1988); *Noack Enterprises, Inc. v. Country Corner Interiors*, 290 S.C. 475, 351 S.E.2d 347 (Ct.App.1987). The district court stated that the actions of COA about which Omni complained involved solely private effects. On the initial appeal, this court indicated that the finding of a conspiracy to restrain competition established the necessary effect on the public interest and consequently reversed the district court's entry of jnov on this count. 891 F.2d at 1143. The Supreme Court, however, stated that its reversal of the conspiracy holding rendered that reasoning inapplicable. —— U.S. at ——, 111 S.Ct. at 1356. We, therefore, must revisit the question of whether the trial judge erred in finding that no impact upon the public interest had been established by the evidence.

Omni asserts that its evidence of double billing by COA established the requisite impact upon the public interest for the UTPA. We disagree. At trial, Omni alleged that COA on several occasions rented the same billboard to two different advertisers for the same time period. Omni suggests that the practice of double billing inflates costs to the advertisers and hence to consumers. Omni, however, cites no evidence in the record to support this proposition. It offers no basis other than sheer speculation to conclude that the total advertising costs of the affected companies rose as a result of the alleged COA practices. South Carolina courts have consistently rejected speculative claims of adverse public impact and required evidentiary proof of such effects. *See Florence Paper Co. v. Orphan*, 298 S.C. 210, 379 S.E.2d

289, 291 (1989); *Columbia E. Assocs. v. Bi–Lo, Inc.*, 299 S.C. 515, 386 S.E.2d 259, 263 (Ct.App.1989).

If the total advertising costs were in fact higher as the result of COA's practices, we believe that this was simply a private injury suffered by the purchasing advertisers. Fraud between commercial parties is an egregious form of breach of contract, and breach of commercial contract, without more, is not actionable under the UTPA. *Key Co., Inc. v. Fameco Distributors, Inc.*, 292 S.C. 524, 357 S.E.2d 476, 478 (Ct.App.1987) (intentional breach of commercial contract not actionable). The South Carolina courts have left no doubt that an "unfair or deceptive act or practice that affects only the parties to a trade or commercial transaction is beyond the act's embrace." *Noack Enterprises*, 351 S.E.2d at 349–350. Moreover, we do not believe that Omni is the appropriate party to seek recovery for any injuries suffered by the advertisers. The UTPA limits recovery to persons who have suffered "actual damages" and does not afford a right of action which is brought "in a representative capacity." S.C.Code of Laws § 39–5–140(a). Omni cannot piggyback on injuries suffered by others. Finding no evidence in the record of any injury to Omni that affects the public interest, we decline to reverse the district court's entry of jnov on this count.[2]

In sum, Omni has been asserting a purely private injury suffered by third parties. Any injury to the public interest in this case stemmed from the activities of COA relating to enactment of a public ordinance. The Supreme Court has held those activities an unacceptable basis for imposing liability, and the remaining dispute between Omni and COA is essentially private in character. While every private dispute doubtless has remote public ramifications, these cannot be held to satisfy the element

---

**2.** Omni argues that the decision of the South Carolina Court of Appeals in *Bocook Outdoor Media, Inc. v. Summey Outdoor Advertising, Inc.*, 294 S.C. 169, 363 S.E.2d 390 (Ct.App.1987), requires us to conclude that the public impact requirement was satisfied here. While *Bocook* was a case involving a claim of monopolization in the outdoor advertising industry, the case involved predatory practices and the direct im-

position of costs upon competitors which differed from those in the instant action, and the *Bocook* court never mentioned the public interest requirement in its analysis. Nothing in the *Bocook* case undermines our belief that plaintiffs in actions brought under this Act must establish through the evidence in the particular case that the alleged unfair trade practices adversely impacted the public interest.

of injury to the public interest which is a prerequisite to any recovery under the UTPA. Were the rule otherwise, every ordinary commercial dispute would become a candidate for the extraordinary remedies provided by the Act.

## VI.

Omni has basically relied in this litigation on an anticompetitive conspiracy between COA and the City of Columbia which culminated in the enactment of zoning ordinances to restrict billboard construction. When that theory collapsed as a result of the Supreme Court's ruling, Omni sought to resuscitate its case on other tangential and previously neglected theories. We believe, however, that Omni has had its opportunity to litigate its grievances with COA and that the time has now come to put this case to rest. For the foregoing reasons, the judgment of the district court is affirmed and the case shall be dismissed.

AFFIRMED.