<u>UNPUBLISHED</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-2505

KOBE,

Plaintiff - Appellant,

MARK, JOHN,

Plaintiffs,

v.

BEVERLY BUSCEMI, in her official capacity as Director of the South Carolina Department of Disabilities and Special Needs; KATHI LACY, in her capacities as employee of the South Carolina Department of Disabilities and Special Needs; THOMAS P. WARING, in his capacity as employee of the South Carolina Department of Disabilities and Special Needs; JACOB CHOREY, in his capacity as employee of the South Carolina Department of Disabilities and Special Needs; MARY LEITNER, in her capacity as the Director of the Richland Lexington Disabilities and Special Needs Board; JUDY JOHNSON, in her capacity as the Director of the Babcock Center; THE BABCOCK CENTER; ANTHONY KECK, in his capacity as the former Director of the South Carolina Department of Health and Human Services; EMMA FORKNER, in her capacity as the former Director of the South Carolina Department of Health and Human Services; JOSHUA BAKER, in his capacity as the Director of the South Carolina Department of Health and Human Services; EUGENE A. LAURENT, former Interim Director of the South Carolina Department of Disabilities and Special Needs; STANLEY BUTKUS, former Director of the South Carolina Department of Disabilities and Special Needs; RICHARD HUNTRESS, in his capacity as Commissioner of the South Carolina Department of Disabilities and Special Needs,

Defendants – Appellees,

and

CYNTHIA MANN, Deputy Administrator and Director of the Center for Medicaid, CHIP, and Survey & Certification, CMS; NIKKI HALEY, in her official capacity as Governor and Chairman of the South Carolina Budget and Control Board; ELEANOR KITZMAN, in her official capacity as the Executive Director of the State Budget and Control Board; GLENN F. MCCONNELL, in his official capacity as the President Pro Tempore of the South Carolina Senate; ROBERT W. HARRELL, JR., in his official capacity as the Speaker of the South Carolina House of Representatives; DANIEL COOPER; CONVERSE CHELLIS, in his capacity as former member of the South Carolina Budget and Control Board; MARK SANFORD, in his capacity as former members of the South Carolina Budget and Control Board; HUGH LEATHERMAN, in his capacity as members of the South Carolina Budget and Control Board; RICHARD ECKSTROM, in his capacity as members of the South Carolina Budget and Control Board; CURTIS LOFTIS, as member of the South Carolina Budget and Control Board; BRIAN WHITE, as member of the South Carolina Budget and Control Board; HENRY MCMASTER, in his official capacity as Governor and Chairman of the South Carolina Budget and Control Board; UNNAMED ACTORS ASSOCIATED WITH THE BABCOCK CENTER,

Defendants.

Appeal from the United States District Court for the District of South Carolina, at Columbia.  Margaret B. Seymour, Senior District Judge.  (3:11-cv-01146-MBS)

Submitted:  May 15, 2020                    Decided:  July 13, 2020

Before DIAZ and THACKER, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

Patricia Logan Harrison, Cleveland, South Carolina, for Appellant.  William H. Davidson, II, Kenneth P. Woodington, DAVIDSON, WREN & PLYLER, P.A., Columbia, South Carolina, for Appellees Buscemi, Butkus, Chorey, Huntress, Lacy, Laurent, and Waring. Damon C. Wlodarczyk, RILEY, POPE & LANEY, LLC, Columbia, South Carolina, for Appellees Keck, Forkner, and Soura.  Patrick J. Frawley, DAVIS FRAWLEY, LLC, Lexington, South Carolina, for Appellee Leitner.  Joel W. Collins, Jr., Christian Stegmaier, Meghan Hazelwood Hall, COLLINS & LACY, P.C., Columbia, South Carolina, for

Appellees Babcock Center, Unnamed Actors Associated with the Babcock Center and Johnson.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This action was filed in 2011 by "Kobe," who used a pseudonym because he feared retaliation.[1] Through a series of orders, the district court eventually ruled against Kobe on all claims asserted against all defendants. Kobe appealed, and this court affirmed in part, vacated in part, and remanded for further proceedings. *See Kobe v. Haley*, 666 F. App'x 281 (4th Cir. 2016) ("*Kobe I*"). On remand, the district court rejected all remaining claims except an official-capacity claim against the Governor under the Americans with Disabilities Act. That claim was subsequently settled. Kobe again appeals. After considering the briefs and the voluminous record, we find no reversible error and affirm.

## I.

## A.

This case involves questions about the provision of Medicaid services to people with intellectual and related disabilities. Although many Medicaid benefits are available only to those in institutions, 42 U.S.C. § 1396n(c) establishes a Medicaid waiver program (the "Waiver Program") that permits states to provide home- and community-based services to eligible persons with intellectual and related disabilities, so that they may avoid institutionalization. *See Kobe I*, 666 F. App'x at 283-84. The benefits and services that may be provided through the Waiver Program include equipment, assistive technology,

---

[1] Two other individuals, "Mark" and "John," were also plaintiffs when this action was filed. They have since been dismissed from the action, and Kobe is the only remaining plaintiff.

and Adult Day Health Care services ("ADHC"), which provide recipients "with medical or therapeutic care as well as social and recreational events and meals." *Id.* at 284.

In South Carolina, the Department of Health and Human Services ("DHHS") is responsible for administering Medicaid benefits and services. DHHS contracts with the South Carolina Department of Disabilities and Special Needs ("DDSN") to operate the benefits and services for Medicaid recipients with intellectual and related disabilities. DDSN in turn contracts with local Disabilities and Special Needs Boards ("DSN Boards"), which contract with private entities to provide Medicaid services.

The Richland Lexington Disabilities and Special Needs Board ("Rich/Lex Board") is the DSN Board responsible for benefits provided in South Carolina's Richland and Lexington Counties. A service coordinator evaluates each recipient's condition and needs in order to develop a plan of care. "Service coordinators may approve some services themselves, but as to other services, they only make a recommendation to DDSN, which decides whether to approve them." *Id.*

Kobe, who was born with severe cerebral palsy, receives Waiver Program benefits through the Rich/Lex Board. Kobe is intelligent but cannot speak in a manner intelligible to others. He cannot walk, so he uses a wheelchair. Because of his spasticity, his arms and legs must be strapped to the wheelchair. Kobe was 29 years old when this action was filed. At that time, he lived in a community training home operated by the Babcock Center and received ADHC services from the Hope Bridge Adult Day Care program. Shortly thereafter, Kobe moved into a congregate group home operated by United Cerebral Palsy, a private provider.

5

Kobe began having problems with his wheelchair in 2008, when he lived at the Babcock Center-operated community home. His plan of care in January 2008 called for a new wheelchair, but he did not receive it until April 2009. The new wheelchair was damaged at least twice, and Kobe was forced to spend weeks in bed during times that the wheelchair was not functional. Kobe also had difficulty in obtaining an augmentative communications device ("ACD") that would permit him to communicate with his caregivers. In 2009, DDNS announced changes in the services provided under the Waiver Program, including the elimination of physical therapy, occupational therapy, and speech and language services. In December 2010, Kobe's service coordinator re-assessed his eligibility for ADHC services and determined that he no longer qualified for the services. Kobe appealed that decision to the DDSN Director; he continued to receive ADHC benefits during the pendency of the appeal.

Kobe alleged in the complaint that the defendants were attempting to reduce ADHC services to force ADHC recipients to instead attend Work Activity Centers ("WACs") operated by local DSN Boards.[2] According to Kobe, WACs are more restrictive and cannot always adequately support the medical needs of its participants. Kobe alleged that the defendants misappropriated funds to support the WAC program and financially benefitted from their operation. Kobe notes that participants in WAC programs are paid less than

---

[2]     A WAC is "[a] workshop having an identifiable program designed to provide therapeutic activities for workers with intellectual disability whose physical or mental impairment is so severe as to interfere with normal productive capacity." S.C. Code Regs. 88-405(K).

minimum wage and that DDSN and local DSN Boards may spend the profits generated by WACs without oversight.

This action was filed in May 2011. After the action was commenced, Kobe received an ACD that uses eye movements to synthesize speech and was sufficient for his needs. Kobe's administrative appeal of the denial of ADHC benefits was resolved in his favor, and the parties entered into a consent decree in 2012 stating that Kobe meets the criteria for ADHC services and that he would continue to receive such services through his chosen provider. Kobe requested and received a new wheelchair in 2013. Also in 2013, Kobe's plan of care called for him to be placed in a private supervised living placement ("SLP") apartment, something Kobe had long requested. As of the time of briefing in this appeal, Kobe remained in the group home. The record shows that DDSN has denied Kobe's post-litigation requests for an apartment placement because of concerns that his extensive needs could not be met in that setting.

B.

The amended complaint named as defendants the Governor of South Carolina; members and former members of the South Carolina Budget and Control Board; the director and a former director of DHHS; the director and former directors and officials of DDSN; the director of the Rich/Lex Board; and the director and unnamed employees of the Babcock Center. The complaint asserted seven federal causes of action, including claims under the Americans with Disabilities Act of 1990 ("ADA"), *see* 42 U.S.C. §§ 12101 *et seq.*; section 504 of the Rehabilitation Act of 1973, *see* 29 U.S.C. § 794; and 42 U.S.C. § 1983. Kobe also asserted state law claims for negligence, intentional infliction of

7

emotional distress, and assault and battery against the Babcock Center defendants based on the care he received during the time he lived there.

In 2012, the district court dismissed all claims against the Budget and Control Board defendants. In 2014, the district court granted summary judgment in favor of the defendants on all claims except Kobe's state-law claims against the Babcock Center defendants.[3] As is relevant to Kobe, the district court concluded that any claims related to his need for a wheelchair and ACD and the possible discontinuation of ADHC services were moot because the wheelchair and ACD had been provided during the course of litigation and Kobe had never lost ADHC services. In a 2015 order denying the plaintiffs' motion to alter or amend, the district court noted that Kobe's claims involving his need for placement in an SLP apartment were not ripe.

On Kobe's appeal, we affirmed in part, vacated in part, and remanded for further proceedings. We affirmed the dismissal of the claims against the Budget and Control Board defendants, but concluded that the district court erred by dismissing on Eleventh Amendment grounds the ADA and Rehabilitation Act claims asserted against the Governor. *See Kobe I*, 666 F. App'x at 304.

We agreed with the district court that all claims involving the ADHC claims were moot. *See id.* at 297. However, we disagreed with the district court's conclusion that Kobe's claims regarding the delays in providing the ACD and a functioning wheelchair

---

[3]     Kobe's state-law claims against the Babcock Center defendants were subsequently settled.

8

were also moot. Given the history of delay in providing those items to Kobe, we held that the "temporary satisfaction of [Kobe's] needs during the pendency of this lawsuit" was not sufficient to carry the defendants' heavy burden of establishing mootness. *Id.* at 298. And because the district court had not sufficiently explained its basis for dismissing the claims, we vacated the district court's dismissal of the federal claims asserted in counts one through seven of the amended complaint and remanded for further consideration of those counts as to the remaining defendants. *See id.*

In the course of our opinion in *Kobe I*, we observed that the plaintiffs had abandoned their claims for monetary damages during a summary judgment hearing held by the district court in 2014. *See id.* at 293 n.19. As to Kobe's claims involving placement in an SLP apartment, we explained that the plaintiffs "offer no challenge to the district court's ruling that their claim that Kobe is entitled to be provided with an SLP is unripe." *Id.* at 295 n.21. Because the plaintiffs did not challenge the ruling, we therefore did not address it. *See id.*

On remand, the district court granted summary judgment in favor of the defendants on all claims except the ADA official-capacity claim asserted against the Governor. (The claim against the Governor was settled after the issuance of the district court's opinion.) This appeal followed.

## II.

"A grant of summary judgment is proper when no genuine dispute of material fact exists for trial. In making this determination, we view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor."

9

*Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020) (citation omitted). Nonetheless, "permissible inferences must still be within the range of reasonable probability, and it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." *Id.* (internal quotation marks and alteration omitted).

A.

Before considering the district court's rejection of Kobe's claims, we pause to address the ripeness of Kobe's claims regarding placement in an SLP apartment.

Much of Kobe's brief is devoted to the SLP placement issue, and he contends the district court erred by finding the claims unripe. However, the district court made its ripeness ruling in the orders that were at issue in *Kobe I*. Although Kobe appealed the district court's orders, he did not challenge the determination that the SLP placement claims were not ripe, and we therefore did not address the issue. *See Kobe I*, 666 F. App'x at 295 n.21. Contrary to Kobe's argument, we did not remand the ripeness question to the district court for reconsideration. Instead, we left the issue as it had been resolved by the district court, because the district court's resolution had not been challenged on appeal. *See Doe v. Chao*, 511 F.3d 461, 465 (4th Cir. 2007) (explaining that "any issue that could have been but was not raised on appeal is waived and thus not remanded") (internal quotation marks omitted). Moreover, because Kobe did not challenge the ripeness ruling in his first appeal, he cannot challenge it now. *See Omni Outdoor Advert., Inc. v. Columbia Outdoor Advert., Inc.*, 974 F.2d 502, 505 (4th Cir. 1992) ("It is elementary that where an

10

argument could have been raised on an initial appeal, it is inappropriate to consider that argument on a second appeal following remand.") (internal quotation marks omitted).

Although this waiver rule is one of prudence rather than jurisdiction, there is no basis for departing from the rule in this case. Given the manner in which this case has proceeded, we cannot fault the district court for declining to expand the litigation to include an issue that arose two years after the filing of the complaint. Kobe remains free, as he has been since the district court first announced its view that the claims were not ripe, to file a separate complaint addressing the SLP apartment placement. But as to the questions raised in this appeal, the SLP claims are not at issue, and Kobe cannot establish error by complaining about the district court's approach to the SLP claims.

B.

We now turn to Kobe's challenges to the district court's grant of summary judgment to the defendants on Counts One through Seven of the amended complaint.

(1)

In Count One, Kobe asserts that the defendants violated the ADA by denying ADHC services in order to force recipients of Waiver Program benefits into the WACs operated by the defendants. Kobe alleges that the medical needs of WAC participants cannot always be adequately addressed at the WAC and that forcing ADHC recipients into WACs puts them at risk and violates the ADA's requirement that public services be delivered in "the most integrated setting appropriate to the needs of qualified individuals with disabilities." *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 592 (1999) (internal quotation marks omitted). In Count Two, Kobe contends that the same actions violate the similar

11

requirement under section 504 of the Rehabilitation Act that services be provided "in the most integrated setting appropriate. . . ." 28 C.F.R. § 41.51(d).

We find no error in the district court's grant of summary judgment in favor of the defendants on Kobe's claims under the ADA and the Rehabilitation Act. Accepting as true Kobe's contentions about the actions of the defendants in creating WACs and attempting to funnel ADHC recipients into the new WACs, we nonetheless conclude that Kobe has failed to show that he has been affected by the alleged scheme. As we explained in *Kobe I*, any claim that Kobe might have had based on his service coordinator's initial decision that Kobe was not eligible for ADHC services was moot because he prevailed in the administrative appeal and his ADHC services were never interrupted. *Kobe I*, 666 F. App'x at 296-97. Thus, even if Kobe is right that forcing someone with his disability into a WAC would violate the ADA and the Rehabilitation Act, he is still receiving ADHC services and has not been required to participate in a WAC. Because Kobe has not established that he suffered an injury under either statute, the district court properly granted summary judgment.

To the extent that Kobe contends his ADA and Rehabilitation Act claims were also premised on the delay in providing an adequate ACD and in repairing his wheelchair, those claims were likewise properly rejected. Although it took longer than it should have for Kobe to get the right ACD, and Kobe had difficulties in the past getting his wheelchair repaired in a timely manner, during the course of his litigation he received a new wheelchair and a proper ACD that was not merely "on loan" to him. Even assuming that the past difficulties could support claims under the ADA or Rehabilitation Act, Kobe during the

summary-judgment hearing abandoned his damage claims against all of the defendants still involved in this case, *see Kobe I*, 666 F. App'x at 293 n.19, and he does not seek any other form of relief as to those specific claims.

To the extent that Kobe contends his ADA and Rehabilitation Act claims should not have been dismissed because they encompass his efforts to be placed in an SLP apartment, we disagree for the reasons discussed above. Those claims were not ripe when the action was commenced, and the district court declined to permit litigation of the after-arising issue in this proceeding. Because Kobe has not shown that he has suffered a presently redressable violation of his rights under the ADA or the Rehabilitation Act, the district court properly granted summary judgment in favor of the defendants on those claims.

(2)

The above analysis also shows that the district court properly rejected the claims asserted by Kobe in Counts Three and Four. *See United States v. Swann*, 149 F.3d 271, 277 (4th Cir. 1998) ("[W]e may affirm the district court's judgment for any reason supported by the record, even if it is not the basis that the district court used."). Those counts assert claims under 42 U.S.C. § 1983 that the defendants violated Kobe's constitutional and statutory rights through the previously discussed scheme to divert funds for ADHC services into inappropriate WACs. Because Kobe has not lost ADHC services or been required to attend a WAC, the scheme, regardless of its wisdom or propriety, has not affected Kobe's constitutional or statutory rights. To the extent the claims are based on the delay in obtaining an appropriate ACD or the damage to Kobe's wheelchair, Kobe waived his damages claims and seeks no other remedy.

13

(3)

Count Five, a conspiracy claim under 42 U.S.C. § 1985(3), fares no better. Claims under section 1985(3) are limited to private conspiracies predicated on "racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). A conspiracy claim under section 1985(3) requires the plaintiff to prove

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995). Like the others, Count Five focuses on the WAC scheme and alleges that the defendants used millions of dollars intended to provide service under the Waiver Program to buy real estate for WACs and conspired to deprive Kobe and others of ADHC services in order to force them to participate in WACs.

Even if the disabled qualify as a class protected under the statute (and we express no opinion on that issue, reserving its resolution for another day), Kobe's evidence is insufficient to show that the defendants conspired to use the WAC scheme for the purpose of causing injury to the disabled. And as we have explained, Kobe never lost his ADHC services, so he has not been injured by the alleged conspiracy. The district court therefore properly rejected Kobe's claim.

(4)

In Count Six, Kobe alleges that the defendants' failure to comply with the requirements of the Medicaid Act violated the Supremacy Clause, *see U.S. Const.*, art. VI,

14

cl. 2. Because "the Supremacy Clause is not the source of any federal rights" and "does not create a cause of action," *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324–25 (2015) (internal quotation marks omitted), the district court properly rejected Count Six.

(5)

Count Seven is a civil RICO claim. *See* 18 U.S.C. §§ 1962, 1964(c). This claim again relies on the defendants' ADHC and WAC-related actions, but also includes wide-ranging allegations of other misconduct by individual defendants. As we have repeatedly explained, Kobe has not lost ADHC benefits and has not been required to attend a WAC, and he has not shown that he was otherwise personally injured by the conduct about which he complains. Kobe's RICO claim therefore fails. *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries.").

III.

For the reasons outlined above, we find no reversible error and therefore affirm the district court's order granting summary judgment to the defendants on all remaining claims.

*AFFIRMED*