**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 24-1954**

───────────────

FREDERICK L. ALLEN; NAUTILUS PRODUCTIONS, LLC,

Plaintiffs – Appellees,

v.

JOSHUA H. STEIN, Governor of North Carolina; SUSAN WEAR KLUTTZ, Former Secretary of the North Carolina Department of Natural and Cultural Resources, in her official capacity; MARGRETTE KATHRYN THOMPSON, Chief Deputy Secretary of the North Carolina Department of Natural and Cultural Resources, in her official capacity; DARIN J. WATERS, Deputy Secretary of the North Carolina Department of Natural and Cultural Resources, in his official capacity; CATHERINE ANN SWAIN, Director of Marketing of the North Carolina Department of Natural and Cultural Resources, in her official capacity; JAMES CHRISTOPHER SOUTHERLY, State Archaeologist, in his official capacity; STEPHEN ATKINSON, Deputy State Archaeologist - Underwater and Director of the Underwater Archaeology Branch of the North Carolina Department of Natural and Cultural Resources, in his official capacity; NORTH CAROLINA DEPARTMENT OF NATURAL AND CULTURAL RESOURCES; STATE OF NORTH CAROLINA; JEFFREY NEALE JACKSON, Attorney General of North Carolina, in his official capacity; PAMELA BREWINGTON CASHWELL, Secretary of the North Carolina Department of Natural and Cultural Resources, in her official capacity; SARAH KOONTS, in her official capacity; MARIA E. VANN, Director of Regional History Museums of the North Carolina Department of Natural and Cultural Resources, in her official capacity; MIKE CARRAWAY, in his official capacity; WILLIAM SCHORR JOHNSON, Director of Communications of the North Carolina Department of Natural and Cultural Resources, in his official capacity,

Defendants – Appellants,

and

FRIENDS OF QUEEN ANNE'S REVENGE, A NON-PROFIT CORPORATION,

Defendant.

———————————

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Terrence W. Boyle, District Judge.  (5:15-cv-00627-BO)

———————————

Argued:  October 22, 2025                    Decided:  January 23, 2026

———————————

Before NIEMEYER, KING, and HARRIS, Circuit Judges.

———————————

Reversed in part, vacated in part, and remanded with directions by published opinion. Judge King wrote the opinion, in which Judge Niemeyer and Judge Harris joined.

———————————

**ARGUED:**  Nicholas Scott Brod, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellants.  Adam Adler, REICHMAN JORGENSEN LEHMAN & FELDBERG LLP, Redwood Shores, California, for Appellees. **ON BRIEF:** Jeff Jackson, Attorney General, Ryan Y. Park, Solicitor General, Kaeli E. Czosek, Solicitor General Fellow, Olga E. Vysotskaya de Brito, Senior Deputy Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellants. Susan Freya Olive, OLIVE & OLIVE, P.A., Durham, North Carolina; G. Jona Poe, Jr., POE LAW FIRM, PLLC, Durham, North Carolina; Elliot Sol Abrams, CHESHIRE, PARKER, SCHNEIDER, PLLC, Raleigh, North Carolina, for Appellees.

———————————

2

KING, Circuit Judge:

In this appeal from the Eastern District of North Carolina, we address another chapter in the decade-long quest by plaintiffs Frederick Allen and his video production company, Nautilus Productions, LLC (collectively, "Allen"), to secure a federal court judgment against a host of defendants — including the State of North Carolina, its Governor and Attorney General, its Department of Natural and Cultural Resources, and various other state officials (collectively, the "North Carolina defendants") — for copyright infringement. Allen's claims arise from photographs and videos he made during an excavation of the sunken remains of the pirate ship called the *Queen Anne's Revenge*, which was commanded by the infamous Blackbeard in waters near the Old North State in the early 1700s.

Over a decade ago, in 2015, Allen initiated this lawsuit against the North Carolina defendants. In 2018, on appeal from a 2017 district court order that denied immunity claims interposed by the North Carolina defendants, this Court reversed. Our decision ruled, inter alia, that those defendants were entitled to sovereign immunity, qualified immunity, and legislative immunity on the various claims. *See Allen v. Cooper*, 895 F.3d 337 (4th Cir. 2018) (the "2018 Decision"). Allen thereupon sought relief from our Court's sovereign immunity rulings in the Supreme Court. The Court granted certiorari and, in its 2020 decision, affirmed our sovereign immunity rulings across the board. *See Allen v. Cooper*, 589 U.S. 248 (2020) (the "2020 Supreme Court Decision").

Notwithstanding those decisions by our Court and the Supreme Court, the district court in 2021 authorized Allen to reopen his lawsuit against the North Carolina defendants.

3

*See Allen v. Cooper*, No. 5:15-cv-00627 (E.D.N.C. Aug. 18, 2021), ECF No. 118 (the "2021 Decision"). That is, Allen was authorized by the 2021 Decision to amend his failed complaint and pursue an entirely new constitutional theory of liability for copyright infringement against the North Carolina defendants — by alleging "as-applied" or "case-by-case" abrogation of state sovereign immunity — premised on a 2006 Supreme Court decision called *United States v. Georgia*, 546 U.S. 151 (2006) (the "*Georgia* theory").

The North Carolina defendants, in a familiar fashion, moved, inter alia, to dismiss the claims alleged in Allen's newly amended complaint on Eleventh Amendment sovereign immunity grounds. In 2024, the district court denied sovereign immunity on one of the new claims and authorized Allen's *Georgia* theory to proceed to discovery. *See Allen v. Cooper*, No. 5:15-cv-00627 (E.D.N.C. Aug. 30, 2024), ECF No. 168 (the "2024 Ruling"). The North Carolina defendants have again appealed, seeking to challenge both the 2021 Decision and the 2024 Ruling. As explained herein, we are constrained to reverse the 2021 Decision, vacate and hold for naught the 2024 Ruling, and remand with directions.

I.

A.

Just as this appeal involves a storied history, the same is true for the facts underlying Allen's copyright claims. For approximately seven months in about 1717 and 1718, a notorious pirate named Edward Teach — colloquially referred to as the "pirate Blackbeard" — commandeered control of a French vessel then known as *La Concorde*. Upon capturing the French vessel, Blackbeard renamed her the *Queen Anne's Revenge* (the

4

"*Revenge*"), and he equipped the *Revenge* for piracy activity on the high seas. Approximately six months later, however, Blackbeard ran the *Revenge* aground near Beaufort Inlet on the North Carolina coast. The wreckage of the *Revenge* was beneath the waves until 1996, when Intersal, Inc., a private exploration company, discovered the sunken remains of the plundered vessel.

Due to its location, the *Revenge* and its artifacts were and are the property of the State of North Carolina, and thus subject to the Old North State's "exclusive dominion and control." *See* N.C. Gen. Stat. § 121-22; *see also* 43 U.S.C. § 2105(c). In 1998, Intersal and the Department of Natural and Cultural Resources of North Carolina entered into a 15-year salvage agreement. Following execution of the salvage agreement, Intersal hired Allen to be the exclusive videographer for the *Revenge* recovery project.

It was at this point, according to Allen, that the North Carolina defendants began to emulate Blackbeard himself — that is, they initiated a "concerted campaign of intentional piracy to steal Allen's property." *See* Br. of Appellee 3 (citation modified). During a multi-year recovery effort regarding the *Revenge*, Allen captured video footage of the shipwreck and registered 13 copyrights with the United States Copyright Office. Each of Allen's copyrights covered a specific year's worth of videos.

Allen asserts that he first discovered acts of copyright infringement by the North Carolina defendants in 2013, when his protected work was uploaded to a state-operated YouTube channel and onto other social media platforms. Allen then approached the North Carolina defendants with his concerns, and the parties settled their differences. That resolution soon soured, however, and Allen alleges that the North Carolina defendants

5

continued to improperly use his video footage online, as well as in a newsletter about the State's Maritime Museum.  Allen also asserts that the North Carolina defendants devised and executed a plan to infringe on his copyrights shortly thereafter, and did so specifically by enacting legislation in 2015.  That legislation was passed by the North Carolina General Assembly and signed into law by the Governor.  It was then codified as N.C. Gen. Stat. § 121-25(b) (2015).[1]  Allen has characterized § 121-25(b) as specifically targeting his work and authorizing the North Carolina defendants to infringe on his copyrights, without limitation.

## B.

### 1.

As recited earlier, Allen initiated this lawsuit in the Eastern District of North Carolina in 2015.  By amended complaint filed in March 2016, Allen alleged three claims that are relevant here.  *See Allen v. McCrory*, No. 5:15-cv-00627 (E.D.N.C. Mar. 7, 2016),

---

[1] Allen refers to N.C. Gen. Stat. § 121-25(b) in these proceedings as "Blackbeard's Law."  At the time of its enactment, § 121-25(b) provided as follows:

> All photographs, video recordings, or other documentary materials of a derelict vessel or shipwreck or its contents, relics, artifacts, or historic materials in the custody of any agency of North Carolina government or its subdivisions shall be a public record pursuant to G.S. 132-1.  There shall be no limitation on the use of or no requirement to alter any such photograph, video recordings, or other documentary material, and any such provision in any agreement, permit, or license shall be void and unenforceable as a matter of public policy.

*See* N.C. Gen. Stat. § 121-25(b) (2015).

6

ECF No. 12 (the "2016 Complaint").[2]  In Count I, Allen sought a declaratory judgment that § 121-25(b), the so-called "Blackbeard's Law" enacted in North Carolina, was preempted by a federal statute — that is, the Copyright Act, 17 U.S.C. § 101 *et seq*.  In Count II, Allen sought damages and injunctive relief for the alleged copyright infringement.

In Count III, Allen alleged a civil rights claim under 42 U.S.C. § 1983, specifying two constitutional violations.  Allen first alleged that the 2015 enactment of N.C. Gen. Stat. § 121-25(b) constituted an unconstitutional taking of Allen's property, in contravention of the Takings Clause of the Fifth Amendment.  Second, Count III specified that such conduct also violated Allen's rights under the Due Process Clause of the Fourteenth Amendment.  In addition to the North Carolina defendants, Allen sued a nonprofit non-governmental entity called the Friends of Queen Anne's Revenge (the "Friends of QAR"), alleging that it had participated in the infringement activities of the North Carolina defendants.

2.

In May 2016, the North Carolina defendants moved to dismiss the 2016 Complaint, claiming Eleventh Amendment sovereign immunity on behalf of the North Carolina entities and officials sued in their official capacities, and claiming both qualified and legislative immunity as to each and every North Carolina official sued in an individual capacity.  A basis for the North Carolina defendants' sovereign immunity claim was that

---

[2] The 2016 Complaint alleged two other counts, for unfair and deceptive trade practices, and for civil conspiracy.  Those claims were dismissed by the district court in 2017 on sovereign immunity grounds.  Neither are at issue in this appeal.

§ 511 of the Copyright Remedy Clarification Act of 1990 (the "CRCA") — which specified a legislative intent to abrogate state sovereign immunity for copyright claims — was not a valid exercise of congressional power, rendering § 511's purported immunity abrogation unconstitutional. *See* 17 U.S.C. § 511(a) (declaring abrogation of state sovereign immunity from copyright claims).

3.

By Order of March 23, 2017, the district court granted the North Carolina defendants' motion to dismiss in part. Specifically, the Order dismissed nearly all of Allen's claims alleged in the 2016 Complaint, excepting Counts I and II. In so ruling, the court determined that Congress, in enacting the CRCA, had validly exercised its authority to abrogate state sovereign immunity. As a result, the court denied the North Carolina defendants' immunity claims on Counts I and II. *See Allen v. Cooper*, No. 5:15-cv-00627 (E.D.N.C. Mar. 23, 2017), ECF No. 69 (the "2017 Ruling"). In dismissing Count III, however, the court decided that it was constrained, by Fourth Circuit precedent, to conclude that Allen's "takings claims brought under § 1983 are barred by the Eleventh Amendment when North Carolina courts are available for such a claim to be brought." *Id.* at 18 (citing *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 552 (4th Cir. 2014)).

4.

As mentioned earlier, the North Carolina defendants pursued a collateral order appeal of the district court's 2017 Ruling on Counts I and II to our Court. Allen cross-appealed, challenging the court's rulings regarding the dismissal of the Count III takings claim, to the extent that claim alleged violations of Fourteenth Amendment due process.

8

In our comprehensive 2018 Decision — authored by our colleague Judge Niemeyer — we ruled that Congress had not validly abrogated State sovereign immunity when it adopted the CRCA. *See Allen v. Cooper*, 895 F.3d 337, 353 (4th Cir. 2018) ("[W]e conclude that the [CRCA's] wholesale abrogation of sovereign immunity for claims of copyright infringement is grossly disproportionate to the relevant injury under the Fourteenth Amendment . . . ."). Our 2018 Decision also ruled that the claims of qualified and legislative immunity by the North Carolina defendants collectively barred all claims against those sued in their individual capacities. *Id.* at 356-58.

The 2018 Decision thus reversed the 2017 Ruling and remanded to the district court for a dismissal of each of the North Carolina defendants from Allen's lawsuit. As a result, the Friends of QAR was the only defendant remaining in the litigation. Allen filed a petition for certiorari in January 2019, requesting the Supreme Court to determine whether Congress had validly abrogated state sovereign immunity from copyright infringement claims when the CRCA was enacted.

5.

In June 2019, the Supreme Court granted Allen's petition for certiorari and heard and considered the merits of our 2018 Decision concerning sovereign immunity. Writing for the Court, Justice Kagan explained and ruled that state sovereign immunity had not been validly abrogated by the CRCA.[3] *See Allen v. Cooper*, 589 U.S. 248, 266-67 (2020)

---

[3] In his petition for certiorari, Allen did not seek review of any of the qualified or legislative immunity rulings that were made in our 2018 Decision.

9

(recognizing that CRCA was designed to provide uniform remedy for statutory infringement "rather than to redress or prevent unconstitutional conduct"). Accordingly, Judge Niemeyer's 2018 Decision was affirmed. *Id.* at 267 (declaring that "we affirm the judgment below").

After the Supreme Court's 2020 decision affirming our 2018 Decision, Allen settled his dispute with the sole remaining defendant in the litigation — the Friends of QAR. As a result, Allen voluntarily dismissed his claims against that defendant with prejudice on August 17, 2020. By all accounts, Allen's lawsuit concerning this entire matter was closed.

## C.

### 1.

But Allen was not ready to give up. On September 4, 2020, Allen filed in the district court for the Eastern District of North Carolina what he called a "motion for reconsideration," relying on Rule 60(b)(6) of the Federal Rules of Civil Procedure. He requested reconsideration of the district court's 2017 Ruling that had dismissed the § 1983 Fifth Amendment takings claim alleged in Count III of the 2016 Complaint. Allen therein also moved to amend his dismissed complaint to "even more clearly set out the facts supporting his cause of action," and to authorize a new theory for abrogation of sovereign immunity. *See* J.A. 58.[4]  That new theory concerning sovereign immunity was predicated on *United States v. Georgia*, 546 U.S. 151 (2006), a Supreme Court decision that — 14

---

[4] Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this appeal.

years before Allen's motion for reconsideration — had adopted the proposition that Congress has "authority to abrogate sovereign immunity for claims arising from state conduct that amounts to an *actual violation* of the Fourteenth Amendment's substantive guarantees." *See Allen*, 895 F.3d at 349 (citing *Georgia*, 546 U.S. at 158 (2006)).

2.

In August 2021, the district court granted Allen's reconsideration motion. Prior to analyzing the merits of the motion, the 2021 Decision recognized that Allen filed his motion "pursuant to Rule 60 of the Federal Rules of Civil Procedure." *See* 2021 Decision 4. But it then declared that Rule 60 was "not applicable," because the 2017 Ruling "dismissed only some of the defendants and some of the claims." *Id.* at 5-6 (reciting that "[r]ather than deny the motion because it cites to Rule 60(b), the Court will construe [Allen's] Rule 60(b) motion as a Rule 54(b) motion to reconsider").

When considering whether Allen's reconsideration motion was timely, however, the 2021 Decision relied on Rule 60(b). Although the motion had been filed more than three years after the 2017 Ruling, the district court noted that due to the time lapse caused by the Fourth Circuit and Supreme Court appeals, there was only an 82-day delay between the 2020 Supreme Court Decision and Allen's motion, which was deemed, in the view of the court, "reasonably timely." *See* 2021 Decision 7-8 (citing Fed. R. Civ. P. 60(b)).

The 2021 Decision next addressed the merits of Allen's Rule 60(b) motion and ruled that a 2019 Supreme Court decision, *Knick v. Township of Scott, Pennsylvania*, 588 U.S. 180 (2019), had implicitly overruled the Fourth Circuit precedent that the district court had relied on in its 2017 Ruling. In that regard, the 2021 Decision declared that the district

11

court's 2017 dismissal of the § 1983 Fifth Amendment takings claim in Count III of the 2016 Complaint was flawed. The 2021 Decision thus ruled that reconsideration was proper "under either Rule 54(b) or Rule 60(b)" due to a "change in decisional law," and that Count III was "no longer dismissed" from the then-concluded litigation. *See* 2021 Decision 21.

Having thereby revived the Count III Fifth Amendment takings claim, the 2021 Decision turned to Allen's request for permission to allege a new theory of abrogation of sovereign immunity, predicated on the Supreme Court's 2006 *Georgia* decision. That "new" theory would purportedly allow Allen to pursue his copyright infringement claims and the resulting constitutional violations that had been dismissed by our Court's 2018 Decision and the 2020 Supreme Court Decision. But instead of analyzing the *Georgia*-based request under Rule 60(b)(6) — again, the Rule that Allen had invoked in his reconsideration motion — the district court again turned to Rule 54(b) and stated that "reconsideration of its previous order of dismissal is appropriate in this case under the Rule 54(b) standard." *See* 2021 Decision 22.

The 2021 Decision then concluded that the district court's "reconsideration" of Allen's copyright infringement and Fourteenth Amendment claims against the North Carolina defendants was proper because the district court had previously ruled that the CRCA was a valid prophylactic abrogation of state sovereign immunity, and the court had "never considered whether [Allen has] a valid claim for abrogation under *Georgia*." *See* 2021 Decision 22. And it proclaimed that the district court had "never expressly closed the door to a valid claim of case-by-case abrogation under *Georgia*," and that the Fourth Circuit and the Supreme Court also "passed on the *Georgia* issue." *Id*.

12

Finally, in response to the North Carolina defendants' contentions that Allen's *Georgia* theory failed on its merits in any event, the 2021 Decision relied on Rule 15(a)(2) of the Federal Rules of Civil Procedure and recognized that leave to amend a complaint may be "freely given when justice requires." *See* 2021 Decision 24. The district court thus granted Allen leave to amend because "*Georgia* serves as a valid basis for [Allen] to bring [his] constitutional claims," and it determined that such leave was proper in order to give Allen an opportunity to "buttress [his] allegations of 'a modern form of piracy'" by the North Carolina defendants. *Id.* (quoting *Allen*, 589 U.S. at 252).

3.

In September 2021, the North Carolina defendants noticed an appeal to our Court, seeking therein a review of the 2021 Decision that had reinstated Allen's lawsuit and granted Allen leave to amend his 2016 Complaint to allege his *Georgia* theory. Allen responded with a motion to dismiss the appeal for lack of jurisdiction. In October 2022, we granted Allen's motion to dismiss by ruling that the 2021 Decision was neither an appealable final decision, nor an appealable interlocutory order. *See Allen v. Cooper*, No. 21-2040, 2022 WL 19226124 (4th Cir. Oct. 14, 2022), ECF No. 27.

D.

1.

In February 2023, Allen filed a second amended complaint in the district court, alleging therein a garden variety of claims. *See Allen v. Cooper*, No. 5:15-cv-00627 (E.D.N.C. Feb. 8, 2023), ECF No. 134 (the "2023 Amended Complaint"). In April 2023, the North Carolina defendants moved to strike a major portion of the 2023 Amended

13

Complaint under Rule 12(f) of the Federal Rules of Civil Procedure, maintaining that most of the Amended Complaint substantially exceeded the bounds authorized by the 2021 Decision. By that same motion, the North Carolina defendants again moved to dismiss all non-stricken allegations of the 2023 Amended Complaint on their sovereign immunity claims, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

2.

Stemming inherently from the district court's 2021 Decision authorizing Allen to reopen this litigation and amend his complaint, the court in 2024 entered an order that is relevant here: the 2024 Ruling analyzing the North Carolina defendants' motion to dismiss. In its 2024 Ruling, the district court recognized that "much of the Second Amended Complaint [went] far beyond the Court's instructions" in the 2021 Decision. *See* 2024 Ruling 2 (citation modified). The 2024 Ruling explained that the 2021 Decision was clear, in that it only authorized "Allen's direct takings claim [alleged in Count III of the 2016 Complaint] and his *Georgia* claims" to proceed. *Id*. at 13. The 2024 Ruling therefore struck all claims that exceeded that mandate without further discussion. *Id.* at 13-14.[5]

The district court's 2024 Ruling then characterized two counts of the 2023 Amended Complaint — that is, Counts III and IV — to be takings claims that arose under the Takings Clause of the Fifth Amendment. The 2024 Ruling also dismissed those claims, however, as barred by Eleventh Amendment sovereign immunity. *See* 2024 Ruling 21-22

---

[5] Allen did not cross-appeal in connection with the 2024 Ruling, to the extent it afforded the North Carolina defendants relief under Rule 12(f). Accordingly, we need not address that aspect of the 2024 Ruling in further detail.

14

(discussing *Zito v. N.C. Coastal Res. Comm'n*, 8 F.4th 281, 286-88 (4th Cir. 2021), which declared that "*Knick* did not undermine *Hutto*, where this Court held sovereign immunity to bar a takings claim against a State in federal court if state courts remain open to adjudicating the claim").[6]

The 2024 Ruling then turned to Allen's *Georgia* theory and stated that *Georgia* was "linked inextricably" to Count I of the 2023 Amended Complaint — the only surviving claim remaining before the district court — which had alleged copyright infringement, in contravention of 17 U.S.C. § 501 *et seq.*, against the North Carolina defendants in their official capacities. *See* 2024 Ruling 13-14. The 2024 Ruling addressed, therefore, whether the North Carolina defendants' copyright infringement activities constituted a denial of Fourteenth Amendment procedural due process. That is, it assessed whether sovereign immunity had been abrogated under a case-by-case theory of abrogation, predicated on the Supreme Court's 2006 decision in *United States v. Georgia*, 546 U.S. 151, 158 (2006) (ruling that Congress has plenary authority to abrogate sovereign immunity on an as-applied basis for claim arising from state conduct that "*actually*" violates the Fourteenth Amendment). To that end, the 2024 Ruling recited that the district court had to consider "whether Allen states claims for copyright infringement and [whether] that same conduct also violates the Fourteenth Amendment." *See* 2024 Ruling 28.

---

[6] The 2024 Ruling also ruled that Allen failed to allege a *Georgia*-based Fourteenth Amendment due process violation on a takings theory. *See* 2024 Ruling 37.

Rejecting the North Carolina defendants' copyright defenses, the 2024 Ruling determined that Allen had properly alleged — under the *Georgia* theory — willful or intentional copyright infringement, as well as a Fourteenth Amendment violation. The court recited that the North Carolina defendants were "in the position to foresee a deprivation and [they] acted pursuant to an established state procedure — § 121-25(b) — whose purpose was to deprive Allen of his protected interest in his copyrights." *See* 2024 Ruling 41. That is, the 2024 Ruling concluded that "under *Georgia*, [§ 511 of the CRCA] validly abrogates the State's sovereign immunity as-applied." *Id.* at 43. As a result, Count I of the 2023 Amended Complaint — alleging copyright infringement and a related denial of Fourteenth Amendment due process pursuant to Allen's *Georgia* theory — was Allen's sole surviving claim (the "*Georgia* copyright infringement due process claim").

\* \* \*

On September 30, 2024, the North Carolina defendants noticed the appeal that is now pending before our Court. The defendants therein stated that they appealed "from those parts of the district court's [2024 Ruling] that denied defendants' motions to dismiss the second amended complaint." *See* J.A. 316.

II.

Having ascertained and summarized the factual and procedural background of this appeal, we turn to the issues which are raised in these circumstances and the competing contentions of the parties. Three issues are presented for consideration.

16

First, we must examine the extent and bases of our jurisdiction in this appeal, which was initiated by the North Carolina defendants following the 2024 Ruling. Second, we assess whether and to what extent we must consider and resolve the contention of the North Carolina defendants that the 2021 Decision was fatally flawed. And third, we will decide whether the challenge of the North Carolina defendants to the 2024 Ruling of the district court should be sustained.

### III.

Having provided the foregoing overview of the issues we are obliged to resolve, we turn to them in that order. Specifically, we will assess our jurisdiction, consider the 2021 Decision, and then discuss our disposition of the 2024 Ruling.

### A.

### 1.

In assessing the jurisdictional morass presented here, we will first summarize the respective positions of the parties. We indisputably possess jurisdiction over the 2024 Ruling, pursuant to the collateral order doctrine, because that Ruling denied the North Carolina defendants sovereign immunity from Allen's *Georgia* copyright infringement due process claim. *See Jackson Creek Marine, LLC v. Maryland*, 153 F.4th 423, 428 (4th Cir. 2025) ("[T]he denial of a state's assertion of sovereign immunity may be immediately appealed under the collateral order doctrine.").

But the North Carolina defendants contend that, in resolving this appeal, we are also entitled to review the 2021 Decision of the district court, pursuant to Rule 3(c)(4) of the

Federal Rules of Appellate Procedure. Specifically, they maintain that the 2021 Decision was an earlier-in-time ruling that "led up to" and merged into the appealable 2024 Ruling. *See* Reply Br. of Appellant 6-7. The North Carolina defendants argue, in other words, that a denial of sovereign immunity is a final decision under 28 U.S.C. § 1291, and therefore that it is an "appealable order" with which the 2021 Decision must merge. *Id.* at 14 (relying on *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 141 (1993)); *see also Lee-Thomas v. Prince George's Cnty. Pub. Schs.*, 666 F.3d 244, 247 (4th Cir. 2012) ("We possess jurisdiction under the collateral order doctrine to review a denial of Eleventh Amendment immunity, in that such a ruling is deemed a final decision under 28 U.S.C. § 1291.").

Allen, on the other hand, contends that our jurisdiction in this appeal is limited to the 2024 Ruling only. Allen asserts that the authorities relied upon by the North Carolina defendants for their merger argument involve appeals that arise from traditional final judgment rulings, such as summary judgments, rather than collateral orders that are appealable because they are final decisions within the meaning of § 1291, such as an order — like the 2024 Ruling — denying sovereign immunity. *See Jenkins v. Woodard*, 109 F.4th 242, 246-47 (4th Cir. 2024) (merging order granting summary judgment with earlier orders denying requests for appointment of counsel and additional time for discovery).

To be sure, Rule 3(c)(4) of the Appellate Rules provides that a "notice of appeal encompasses all orders that, for purposes of appeal, merge into the designated judgment or appealable order." *See* Fed. R. App. P. 3(c)(4). But our Court has apparently never applied Rule 3(c)(4) to merge and confer appellate jurisdiction over an earlier interlocutory order,

18

such as the 2021 Decision, with an appealable collateral order denying a claim of sovereign immunity, or any other type of immunity.

In these circumstances, we are content to leave for another day the North Carolina defendants' Rule 3 merger contention. And that is because we are satisfied that we possess what is called pendent appellate jurisdiction over the 2021 Decision.

2.

Pendent appellate jurisdiction is a "judicially-created, discretionary exception to the final judgment requirement." *See Rux v. Republic of Sudan*, 461 F.3d 461, 475 (4th Cir. 2006). When an issue is already properly before a court of appeals, "[p]endent appellate jurisdiction permits appellate courts to 'retain the discretion to review issues that are not otherwise subject to immediate appeal when such issues are so interconnected with immediately appealable issues that they warrant concurrent review.'" *See Nero v. Mosby*, 890 F.3d 106, 123 (4th Cir. 2018) (citing *Rux*, 461 F.3d at 475). Though pendent appellate jurisdiction should only be exercised sparingly, we have recognized that it may be utilized "(1) when an issue is inextricably intertwined with a question that is the proper subject of an immediate appeal; or (2) when review of a jurisdictionally insufficient issue is necessary to ensure meaningful review of an immediately appealable issue." *See Scott v. Fam. Dollar Stores, Inc.*, 733 F.3d 105, 111 (4th Cir. 2013) (citation modified); *see also Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 49-50 (1995) (cautioning against "a rule loosely allowing pendent appellate jurisdiction").

As to the first situation, separate issues are "inextricably intertwined" when "the same specific question will underlie both the appealable and the non-appealable order, such

19

that resolution of the question will necessarily resolve the appeals from both orders at once." *See Indus. Servs. Grp., Inc. v. Dobson*, 68 F.4th 155, 167 (4th Cir. 2023) (citation modified); *see also Altman v. City of High Point, N.C.*, 330 F.3d 194, 207 n.10 (4th Cir. 2003) (determining that resolution of issue of whether officers were entitled to qualified immunity was "inextricably intertwined" with issue of whether municipality could be held liable because the immunity issue "fully resolve[d]" the municipality's liability).  We have thus exercised pendent appellate jurisdiction when an earlier, non-immediately appealable order "is inextricably linked to the outcome of the" appealable issue.  *See Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 615 (4th Cir. 2001).

As to the second scenario, an issue is "necessary to ensure meaningful review if resolution of the appealable issue necessarily resolves the non-appealable issue or where review of the non-appealable issue is necessary to ensure meaningful review of the appealable one."  *See Scott*, 733 F.3d at 111 (citation modified).  Our Court has utilized this alternative when orders at issue have been "so interconnected" that they had to be reviewed concurrently.  *See Elegant Massage, LLC v. State Farm Mut. Auto. Inc. Co.*, 95 F.4th 181, 188-89 (4th Cir. 2024) (exercising pendent appellate jurisdiction over non-appealable order because "threshold merits question" addressed therein was "integral" to ruling in appealable order).

3.

The circumstances of this collateral order appeal from the 2024 Ruling warrant the exercise of our discretion to review the 2021 Decision under either prong of the pendent jurisdiction analysis.  *See Ealy v. Pinkerton Gov't Servs., Inc.*, 514 Fed. App'x 299, 309

20

(4th Cir. 2013) ("But the two potential pendent jurisdiction scenarios set forth in *Swint* are not always so easily distinguished."). Put succinctly, it would be unworkable for us to rule that we possess jurisdiction with respect to the 2024 Ruling — which denied the North Carolina defendants sovereign immunity — but that we lack jurisdiction concerning the 2021 Decision that made the 2024 Ruling possible.

To be sure, this is not a situation where the 2021 Decision is merely related to, or helpful to, an analysis of the 2024 Ruling. The 2021 Decision is the sole and only seed thereof. Put differently, the 2021 Decision is the necessary foundational prerequisite for the appealable 2024 Ruling, and it is therefore linked inextricably to our disposition of this appeal. The plain terms of the 2024 Ruling make that clear, as they reference the scope of the authorized "reconsideration" fixed by the 2021 Decision in analyzing the North Carolina defendants' sovereign immunity-based motion to dismiss. *See* 2024 Ruling 2 ("Much of the Second Amended Complaint goes far beyond the Court's instructions[.]"). The 2021 Decision also made explicit rulings concerning Allen's *Georgia* theory, which is an issue in the North Carolina defendants' appeal of the 2024 Ruling. *See* 2021 Decision 23-24 (determining that alleged conduct of North Carolina defendants amounted to both statutory and constitutional violations, and "[t]herefore, [Allen] can still use the CRCA as a basis for [his] *Georgia* claim").

On a similar score, the 2021 Decision was the sole basis for the district court's purported authority relative to the 2024 Ruling. *See Hendricks v. Bank of America*, 408 F.3d 1127, 1134-35 (9th Cir. 2005) (explaining that pendent appellate jurisdiction may exist "over those questions that implicate the very power the district court used to issue the

21

rulings then under consideration"). In this situation, if the court erred in 2021 in reopening this litigation to "reconsider" contentions that it never addressed, it would unequivocally have no authority to analyze and resolve the North Carolina defendants' Eleventh Amendment sovereign immunity claims before us today.

The foregoing concerns are especially ripe here, because our Court and the Supreme Court have each determined at least six years ago that the North Carolina defendants are entitled to sovereign immunity on Allen's claims. And in these circumstances, the 2021 Decision is "so interconnected" with the 2024 Ruling "as to require concurrent review." *See Elegant Massage, LLC*, 95 F.4th at 188. As a result, we will exercise our discretion to apply the pendent appellate jurisdiction doctrine and also assess the 2021 Decision in this collateral order appeal from the 2024 Ruling.

## B.

### 1.

Satisfied with the jurisdictional question, we proceed to assess whether the district court erred in reopening Allen's litigation in 2021.[7] As explained above, on September 4, 2020, Allen moved for reconsideration in the district court, relying on Rule 60(b)(6) of the Federal Rules of Civil Procedure, which applies to relief from final judgments, orders, or

---

[7] As a threshold matter, we reject Allen's contention that the North Carolina defendants waived their objections to the 2021 Decision by failing to raise them when they appealed the 2021 Decision in September 2021. Allen moved to dismiss immediately after the North Carolina defendants noticed their 2021 appeal. And we granted Allen's motion and dismissed for lack of jurisdiction. *See Allen v. Cooper*, No. 21-2040, 2022 WL 19226124 (4th Cir. Oct. 14, 2022), ECF No. 27.

proceedings in certain circumstances. The court, however, proceeded to a "reconsideration" of Allen's copyright and constitutional claims under Rule 54(b) — a less onerous Rule for modification of non-final decisions.

Of importance here, a district court's application of each of those Rules is reviewed on appeal for abuse of discretion. *See, e.g., Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017) (reviewing 54(b) ruling for abuse of discretion); *Aikens v. Ingram*, 652 F.3d 496, 501 (4th Cir. 2011) (en banc) (reviewing 60(b) ruling for abuse of discretion). We have recognized that "a district court abuses its discretion when it acts in an arbitrary manner, when it fails to consider judicially-recognized factors limiting its discretion, or when it relies on erroneous factual or legal premises." *See Wall v. Rasnick*, 42 F.4th 214, 220 (4th Cir. 2022) (citation modified). Notably, our Court has made clear that "an error of law is by definition an abuse of discretion, and such an error is alone grounds for reversal." *See Wudi Industrial (Shanghai) Co., Ltd. v. Wong*, 70 F.4th 183, 190 (2023) (citation modified); *Pendleton v. Jividen*, 96 F.4th 652, 656 (4th Cir. 2024) ("A ruling that rests on an error of law is necessarily an abuse of discretion.").

## 2.

In this light, we will first evaluate whether the district court abused its discretion in deciding to apply Rule 54(b) — rather than Rule 60(b) — to its consideration of Allen's 2021 motion to revive his *Georgia*-based copyright and constitutional claims. And we are satisfied that the court erred in that regard. Put simply, Rule 60(b) was the only conceivable — yet nevertheless inadequate — means to reopen this litigation.

23

a.

Before explaining that reconsideration of this litigation was erroneous under Rule 60(b), we will first discuss why it was not permissible under Rule 54(b) and describe why the 2021 Decision amounts to an "error of law" that is "alone grounds for reversal." *See Wudi*, 70 F.4th at 190 (citation modified). And that is because Rule 54(b) applies to interlocutory, pre-judgment orders, whereas Rule 60(b) governs final judgments. Rule 54(b) provides, in relevant part, that

> any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and *may be revised at any time before the entry of a judgment adjudicating all the claims* and all the parties' rights and liabilities.

*See* Fed. R. Civ. P. 54(b) (emphasis added). By contrast, and entirely on the other hand, Rule 60(b) is titled "Grounds for Relief from a *Final* Judgment, Order, or Proceeding." *See* Fed. R. Civ. P. 60(b) (emphasis added).

In addressing Allen's request in 2021 for "reinstatement of [his] lawsuit and an opportunity to amend [his] complaint" with respect to his then-dismissed claims that the North Carolina defendants had violated the CRCA and the Fourteenth Amendment, the district court ruled that "reconsideration of its [2017 Ruling] of dismissal is appropriate in this case under the Rule 54(b) standard." *See* 2021 Decision 21-22. The court determined that its 2017 Ruling had not been a final order, because only some of Allen's claims against the North Carolina defendants were dismissed, and a non-governmental defendant, the Friends of QAR, remained in the suit. But that analysis failed to assess the relevant

24

appellate procedural history.  Taking that history into account, there is no doubt that the 2017 Ruling was not an interlocutory order within the purview of Rule 54(b).

A brief restatement of the procedural timeline is helpful.  The district court ruled in 2017 that the North Carolina defendants' sovereign immunity contentions on Allen's copyright-based claims had not been abrogated.  We reversed that decision — ruling in 2018 that the North Carolina defendants were immune from Allen's claims.  And the district court then dismissed Allen's claims against the North Carolina defendants — pursuant to our Court's mandate — on August 24, 2018.

Following the Supreme Court's affirmance of our Court's 2018 Decision in 2020, Allen dismissed his lawsuit against the only then-remaining defendant, the Friends of QAR, on August 17, 2020.  With all parties having been dismissed from the litigation, as of August 2020, the lawsuit was no longer in existence, in that all rights and liabilities between and among the various parties had been adjudicated within the meaning of Rule 54(b).

In other words, the district court's implementation of our Court's 2018 mandate and Allen's dismissal of the Friends of QAR in 2020 necessarily had resulted in a final judgment.  There was thus no interlocutory order for the district court to seek to "revise" in 2021.  *See* Fed. R. Civ. P. 54(b); *Waetzig v. Halliburton Energy Servs., Inc.*, 604 U.S. 305, 312 (2025) (holding that even a "voluntary dismissal without prejudice is 'final' under Rule 60(b)" and that such a "dismissal is the conclusive and last filing on the docket, and it completes the particular lawsuit at issue" (citation modified)).  This litigation — which began in 2015 — was concluded in 2020, and there was nothing for the district court to do

25

with respect to Allen's lawsuit. *See Calderon v. GEICO Gen. Ins. Co.*, 754 F.3d 201, 204 (4th Cir. 2014) ("In the ordinary course a 'final decision' is one that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." (citation modified)).

The purpose of Rule 54(b) is to allow an appeal before "the determination of all issues as to all parties" and "before a final judgment can be had." *See Dickinson v. Petroleum Conversion Corp.*, 338 U.S. 507, 511 (1950). Although the district court's 2021 actions might have been proper in 2017, they were not proper in 2021. The 2021 Decision of the district court was thus an abuse of its discretion.

Resisting that straightforward conclusion, however, Allen maintains that he had obtained leave to file his motion for reconsideration before he voluntarily dismissed the Friends of QAR, and that there was not a final judgment for Rule 60(b) purposes. But this proposition is without merit. Despite Allen's creative characterizations, Allen's Rule 60(b)(6) motion was undeniably filed on September 4, 2020, after he had voluntarily dismissed the Friends of QAR on August 17, 2020. Put simply, the briefing schedule established by the district court is not the relevant measurement — the motion itself, which Allen filed to seek leave to amend his complaint to again pursue his claims against the North Carolina defendants, is what controls. *See* Fed. R. Civ. P. 41(a)(1)(A)(ii) (establishing that voluntary stipulation of dismissal does not require court order to become effective); *see also* 9 Charles A. Wright & Arthur Miller, Federal Practice and Procedure § 2363, at 270-271 (2d ed. 1995) (explaining that "voluntary dismissal by stipulation is effective immediately upon filing and does not require judicial approval").

The result of the foregoing analysis is inevitable:  On September 4, 2020, when Allen filed his motion for reconsideration — seeking leave to amend his failed and dismissed complaint — there were no live claims then pending against any defendant, and this lawsuit had terminated.  And Allen apparently recognized that Rule 60(b) was the only possible avenue for obtaining reconsideration, as he invoked that Rule himself.  *See* J.A. 58 (declaring that Allen "move[s] pursuant to Rule 60(b)(6) for [the district court] to reconsider its Order . . . dismissing Count III of Allen's amended complaint"); *see also* J.A. 54 (status report filed by Allen on July 15, 2020 in the district court describing Allen's settlement with Friends of Queen Anne's Revenge as "the only live issue in the case").

### b.

We accordingly turn to whether the district court abused its discretion on August 18, 2021, by filing its 2021 Decision that purported to reopen this litigation under Rule 60(b).  *See Humphrey v. Humphrey*, 434 F.3d 243, 248 (4th Cir. 2006) ("When a trial court applies the wrong legal test an appellate court may resolve the case without remanding if the evidence would inevitably produce the same outcome under the correct standard." (citation modified)).  We are satisfied that an abuse of discretion occurred with respect to the 2021 Decision.

### i.

Rule 60(b) of the Federal Rules of Civil Procedure authorizes a federal court to "relieve a party from a final judgment, order, or proceeding" in certain specific circumstances, including mistake or excusable neglect, newly discovered evidence, or

27

fraud. *See* Fed. R. Civ. P. 60(b)(1)-(5) (citation modified).[8] Rule 60(b) also contains a "catchall" provision — in Rule 60(b)(6) — that a court may apply for "any other reason that justifies relief." *Id.* at 60(b)(6). The catchall provision of Rule 60(b)(6) is only to be applied, however, when "the movant demonstrates extraordinary circumstances." *See Wells Fargo Bank, N.Z. v. AMH Roman Two NC, LLC*, 859 F.3d 295, 299 (4th Cir. 2017) (citation modified); *Ackermann v. United States*, 340 U.S. 193, 199-202 (1950) (explaining that "extraordinary circumstances" are required for Rule 60(b)(6) relief).

Moreover, "to obtain relief from a judgment under Rule 60(b), a moving party must first show (1) that the motion is timely, (2) that he has a meritorious claim or defense, and (3) that the opposing party will not suffer unfair prejudice if the judgment is set aside." *See United States v. Welsh*, 879 F.3d 530, 533 (4th Cir. 2018). Of especial relevance here, "if

---

[8] Specifically, Rule 60(b)'s multiple enumerated reasons for relief, absent its "catchall" provision, include the following:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void; [and]

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable[.]

*See* Fed. R. Civ. P. 60(b)(1)-(5).

28

the reason asserted for the Rule 60(b)(6) motion could have been addressed on appeal from the judgment, we have denied the motion as merely an inappropriate substitute for an appeal." *See Aikens*, 652 F.3d at 501; *Dowell v. State Farm Fire & Cas. Auto. Ins. Co.,* 993 F.2d 46, 48 (4th Cir. 1993) (explaining that "voluntary, deliberate, free, untrammeled choice" not to appeal judgment or order will not provide basis for Rule 60(b)(6) relief (citing *Ackermann*, 340 U.S. at 200)).

ii.

In the present situation, Allen moved for reconsideration under Rule 60(b)(6) and has made no assertion that his request for reconsideration fits into any of the five other enumerated scenarios in Rule 60(b)(1) through (5). Nor could he. The *Georgia* decision had been established Supreme Court precedent since 2006, that is, for approximately 14 years at the time Allen filed his Rule 60(b) motion. We must therefore decide whether Allen has shown that there were "extraordinary circumstances" — which must exist in order to invoke the "catchall" provision of Rule 60(b)(6) — sufficient to allow him to reopen this litigation in 2021 and amend his complaint to reallege previously-dismissed claims under an afterthought theory. The answer to that question is strikingly simple: no such circumstances existed here, and the district court's ruling is thus an erroneous abuse of discretion.

In that regard, the crux of the district court's reasoning in its 2021 Decision for reopening this litigation and authorizing Allen to pursue his 2006 *Georgia* theory of liability is that, because the district court had previously determined that the CRCA was

29

valid prophylactic abrogation, "it never considered whether [Allen has] a valid claim for abrogation under *Georgia*." *See* 2021 Decision 22.  The court explained that it

> never expressly closed the door to a valid claim of case-by-case abrogation under *Georgia*.  Because this Court, the Fourth Circuit, and the Supreme Court all passed on the *Georgia* issue, it is appropriate to consider this claim for case-by-case abrogation following the Supreme Court's decision rejecting the CRCA as a valid prophylactic statute.

*Id.*[9]

The district court's explanation in the 2021 Decision is fatally flawed for multiple reasons.  First, and perhaps most critically, the *Georgia* decision had been "on the books" since 2006 — 10 years before Allen had even filed his 2016 Complaint.  *See United States v. Georgia*, 546 U.S. 151 (2006).  Allen had never alleged a *Georgia* theory, and he had neither raised nor pursued a *Georgia*-based contention before this Court in the 2018 appeal.  Critically, Allen did not argue a *Georgia* theory in the Supreme Court after our Court disposed of his prophylactic abrogation theory.  And that fact is important, because the *Georgia* Court itself had granted a remand for the lower courts to assess whether as-applied abrogation could be a viable alternative for the claims.

Second, neither Allen nor the district court has presented any explanation of how Allen's failure to pursue an established legal theory — such as that created by *Georgia* — could ever meet the exceptional circumstances requirement of Rule 60(b)(6).  *See Omni*

---

[9] We observe that the 2021 Decision's assertion that the Fourth Circuit "passed" on the *Georgia* issue is belied by our 2018 Decision.  *See Allen v. Cooper*, 895 F.3d 337, 349 (4th Cir. 2018) (citing to *Georgia* and declaring that "Congress has plenary authority to abrogate sovereign immunity for claims arising from state conduct that amounts to an *actual violation* of the Fourteenth Amendment's substantive guarantees").

30

*Outdoor Advert., Inc. v. Columbia Outdoor Advert., Inc.*, 974 F.2d 502, 506 (4th Cir. 1992) ("[N]othing in the federal rules encourages a plaintiff to delay bringing causes of action until the plaintiff's 'better' claim is resolved."). And, in this situation, Allen would need to justify hauling the North Carolina defendants back into court concerning claims that were dismissed years earlier on Eleventh Amendment sovereign immunity grounds. Put simply, we agree with the North Carolina defendants that the prejudice to them from Allen's delay in pursuing his *Georgia* theory is "manifest." *See* Br. of Appellant 35.

Third, the 2021 Decision was fatally flawed for yet another reason. That is, the district court bypassed the second and third prongs of the Rule 60(b) analysis — i.e., that the movant must establish that he has a meritorious claim or defense and that the opposing party will not suffer unfair prejudice — in a handful of sentences from its 2021 Decision, which perplexingly collapsed Allen's Rule 60(b)(6) and Rule 15(a) burdens:

> *Defendant argues that [Allen's] Georgia argument fails on the merits. However, [Allen] seek[s] an opportunity to amend to allege more facts to buttress the allegations* of taking without due process, intentional infringements, and those responsible. Rule 15 of the Federal Rules of Civil Procedure provides that a party may amend his pleadings with leave of the court. Fed. R. Civ. P. 15(a)(2). Further, Rule 15 directs that leave to amend be freely given when justice requires. *Id.* "This liberal rule gives effect to the federal policy in favor of resolving cases on their merits *instead of disposing of them on technicalities.*" *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (citing *Conley v. Gibson*, 335 U.S. 41, 48 (1957)).

*See* 2021 Decision 24 (emphasis added).

Notwithstanding the district court's faulty analysis, the Supreme Court has recently confirmed that a movant must satisfy Rule 60(b)(6)'s standard before a district court can consider the issue of whether to grant leave to amend a complaint:

31

> The Rule 60(b)(6) standard does not change when a party seeks to reopen his case to amend his complaint. In that circumstance, satisfaction of Rule 60(b)(6) necessarily precedes any application of Rule 15(a).

*See BLOM Bank SAL v. Honickman*, 605 U.S. 204, 213 (2025); *see also Daulatzai v. Maryland*, 97 F.4th 166, 178 (4th Cir. 2024) (recognizing that "if a plaintiff seeks to reopen a case under Rule 60(b) in order to file an amended complaint, she must satisfy one of the Rule 60(b) grounds *before* a court may consider her motion to amend"). The 2021 Decision authorized Allen to reopen his litigation then and there, and to demonstrate its merits later, notwithstanding the North Carolina defendants' objections. *See BLOM Bank SAL*, 605 U.S. at 214 ("What a district court may not do is what the Second Circuit demanded here: dilute Rule 60(b)(6)'s stringent standard by balancing it with Rule 15(a)'s liberal pleading principles." (citation modified)).

Fourth, we cannot accept the 2021 Decision's explanation that the belated nature of Allen's request to amend and pursue the *Georgia* theory prevents an unwarranted disposal of a lawsuit on a "technicality." *See* 2021 Decision 24 (citation modified). On the contrary, it is difficult to imagine how the restart of this litigation is anything other than a "do-over." Our Court has been clear that "although Rule 15(a) indicates that leave to amend should be freely given when justice so requires, the rule does not afford plaintiffs a tool to engage in the litigation of cases one theory at a time." *See Omni Outdoor*, 974 F.2d at 506 (citation modified). As our Judge Wilkinson cogently explained therein, "trying cases one claim at a time is both unfair to the opposing party and inefficient for the judicial system." *Id*. In these circumstances, Allen had a full and fair opportunity to raise and litigate his *Georgia*

32

contentions when he initiated this lawsuit in 2015. But he failed to do so then, in 2018 before our Court, and again in the Supreme Court in 2020.

Put simply, the district court abused its discretion in rendering its 2021 Decision. We are constrained to reverse each of the rulings made therein with respect to the *Georgia* copyright infringement due process claim.[10]

C.

In light of our conclusion that the 2021 Decision was an abuse of the district court's discretion, we turn to an assessment of the 2024 Ruling. On that score, we are satisfied to vacate as moot the 2024 Ruling, pursuant to our Court's precedent in *Norfolk Southern Railway Co. v. City of Alexandria*, 608 F.3d 150 (4th Cir. 2010). As we recognized in 2010 in our *Norfolk Southern* decision, "[w]e are always obliged to assure ourselves that a live dispute exists between the parties at all stages of litigation." *Id.* at 161. To that end, "[a] dispute is moot when the parties lack a legally cognizable interest in the outcome." *Id.* (citation modified). And "the parties lack such an interest when . . . our resolution of an issue could not possibly have any practical effect on the outcome of the matter." *Id.*; *see also Holloway v. City of Va. Beach*, 42 F.4th 266, 275 (4th Cir. 2022) ("Under these well-

---

[10] As we have heretofore explained, *see supra* Part I.C.2, the 2021 Decision also authorized reconsideration of the 2016 Complaint's Count III Fifth Amendment takings claim that was dismissed by the district court in its 2017 Ruling. Because reconsideration of that claim was predicated on a perceived change in decisional law — rather than on Allen's *Georgia* theory — and because no party contests the district court's dismissal of that claim in its 2024 Ruling, we do not review that ruling.

established mootness principles, federal courts may not opine on the merits of a case when doing so would have no practical effect on the outcome of the matter." (citation modified)).

With those well-established principles in mind, "[t]he customary practice when a case is rendered moot on appeal is to vacate the moot aspects of the lower court's judgment," if the mootness "occurred through happenstance, rather than through the voluntary action of the losing party." *See Norfolk S.*, 608 F.3d at 161-62 (citation modified); *Goldman v. Brink*, 41 F.4th 366, 369 (4th Cir. 2022) (applying *Norfolk Southern* precedent to, inter alia, vacate "unreviewed" constitutional ruling on Eleventh Amendment sovereign immunity); *Palmer v. Liberty Univ., Inc.*, 72 F.4th 52, 69 (4th Cir. 2023).

In these circumstances, we are of opinion that a decision on the underlying merits of the 2024 Ruling "could not possibly have any practical effect on the outcome of the matter," given our disposition today on the 2021 Decision. *See Norfolk S.*, 608 F.3d at 161. That is, the resolution of the Eleventh Amendment sovereign immunity issues presented — yet again — in this matter, vis-à-vis the 2024 Ruling, would necessarily "result in an advisory opinion being rendered" on moot constitutional issues. *Id.* at 162; *Goldman*, 41 F.4th at 369. And although a party "may desire that we render an opinion to satisfy [a] demand for vindication or curiosity about who's in the right and who's in the wrong" relative to the *Georgia* copyright infringement due process claim, "we may only decide cases that matter in the real world." *See Norfolk S.*, 608 F.3d at 161 (citation modified).

34

IV.

Pursuant to the foregoing, we are constrained to reverse the 2021 Decision and vacate as moot — and hold for naught — the 2024 Ruling, as well as all rulings of the district court subsequent to the 2021 Decision. Consistent therewith, we remand with directions to close this litigation by dismissing the North Carolina defendants and all claims lodged and pending against them herein, with prejudice.

*REVERSED IN PART, VACATED IN PART,*
*AND REMANDED WITH DIRECTIONS*